WHITSON COMPANY, INCORPORATED, ET AL V. BLUFF CREEK OIL COMPANY AND R. H. RUCKER, JR.

No. A-5286. Decided June 27, 1956.
Rehearing Overruled October 3, 1956.
(293 S.W. 2d Series 488)

*Stine & Stine*, of Henrietta, *Hassell & Hassell* and *J. W. Hassell, Jr.*, all of Dallas, for petitioners, Whitson Company, L. R. Whitson and O. W. R. Oil Company.

The Court of Civil Appeals erred in holding that the judgment of the trial court as to Rucker should be affirmed, since, from the record, there were no means to separate the two ele-

ments of damage. Sims Oil Co. v. Colquitt, Texas Com. App., 298 S.W. 491 and, on rehearing, 2 S.W. 2d 421; Fisher v. Coastal Transport Co., 149 Texas 224, 230 S.W. 2d 522; Dallas Ry. & Term. Co. v. Hendrix, Texas Civ. App., 261 S.W. 2d 610.

*Robinson, Shipp, Robertson & Barnes,* of Oklahoma City, Okla., *Donald & Donald* and *T. B. Coffield,* all of *Bowie,* for Bluff Creek Oil Company, respondent.

On the question of the measure of damages; Pickins v. Harrison, 151 Texas 562, 252 S.W. 2d 575; Gladys Bell Oil Co. v. Turner, 12 S.W. 2d 847, writ of error refused; Klein v. Century Lloyds, 154 Texas 160, 275 S.W. 2d 95.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In the trial court judgment was rendered on the verdict of a jury in favor of Bluff Creek Oil Company and R. H. Rucker, Jr., against Whitson Company, Inc., for $35,000.00 and $8,000 respectively, for the negligent destruction of an oil well and the resultant loss of the lease upon which the well was drilled. That part of the judgment awarding recovery to Rucker of $8,000.00 was affirmed by the Court of Civil Appeals, and that part of the judgment in favor of Bluff Creek Oil Company for $35,000.00 was reversed, and the cause remanded. 278 S.W. 2d 339. Both Whitson Company, Inc., hereinafter called Whitson Company, and Bluff Creek Oil Company, hereinafter called Bluff Creek, have filed applications for writs of error, Whitson Company contending that judgment should be rendered in its favor and Bluff Creek contending that the judgment of the trial court should be affirmed.

While there is practically no dispute in the testimony, and only elementary principles of law are involved, still the terms of the contracts forming the basis of the suit are so intricate and unusual that we have experienced difficulty in formulating an understandable statement of the case and are doubtful that we have succeeded in doing so. Our statement will be limited to such facts as are though to be relevant to the issues presented in the applications.

On January 25, 1949; A. J. Harrell and others executed a mineral lease to R. H. Rucker, Jr., covering 87 acres of land in Montague County, retaining the usual 1/8 royalty. The term of the lease was for one year and as long thereafter as oil or

gas or either of them was produced by the lessee. Thereafter, Rucker assigned the lease to Bluff Creek, retaining in himself 1/8 of the production from the lease, free and clear of the cost of drilling and production, the interest retained by him being known in oil circles as a 1/8 overriding royalty. Under the assignment Bluff Creek received an interest of 6/8 of the production. Thereafter, on June 4, 1949, Bluff Creek entered into a contract with White and Webb Drilling Company, by the terms of which the latter agreed to drill a well on the lease to completion, and Bluff Creek assumed certain obligations hereinafter stated. Under that contract drilling was commenced by White and Webb Drilling Company. On June 9, 1949, Bluff Creek and Whitson Company entered into a contract, the terms of which material to this decision were: Whitson Company agreed to assume the obligations of Bluff Creek under its drilling contract with White and Webb, which obligations were to pay the cost of drilling the well, to assign an oil payment to White and Webb, and to deposit $20,000.00 in a named bank. In consideration Bluff Creek agreed that prior to the completion of the well provided for in the contract it would assign and convey to Whitson Company "the lease and leasehold interest," subject to the terms of the drilling contract and to the reservation of the interest of Bluff Creek. The reserved interest was 1/16 of 6/8 of the oil produced from the well, less the sum payable on account of the oil payment to White and Webb. The contract further provided that when the full cost of drilling and completing the well should have been recovered by Whitson Company out of 15/16 of 6/8 of the production, then the full amount of pipe line runs to 6/8 of the production should be paid to Whitson Company "until it shall have received a further sum equal to the amount theretofore received from the one-sixteenth of six-eighths (1/16 of 6/8) by Bluff Creek. When such sum shall have been paid to Whitson Company, the propertly shall be jointly and equally owned and operated, and income therefrom and expenses of operation shall be borne equally by the parties."

The contract makes reference to an oil payment to White and Webb Drilling Company, but it appears that Whitson Company purchased that, and no issue regarding same is in the case at this time. On August 31, 1949, in compliance with its obligation in the contract of June 9 "to assign and convey to Whitson Company the lease and leasehold interest," Bluff Creek executed and delivered to Whitson Company an instrument styled "Assignment of an Undivided Interest in Oil and Gas Lease." The assignment recited that it assigned to Whitson

Company "an undivided fifteen-sixteenths (15/16) of six-eighths (6/8) interest in the proceeds from all oil, gas and other minerals * * *." It provided that Whitson Company should receive that interest until it had been reimbursed for all sums expended in drilling and completing the well and all sums expended in its operation. It further provided that when all those sums had been reimbursed, Whitson Company should be entitled to receive the full 6/8 of the proceeds from the well until it had received a sum equal to that received by Bluff Creek from its overriding royalty of 1/16 of 6/8. When the net runs should thus be equalized, Whitson Company should receive ½ of 6/8 of the proceeds of the minerals produced from the premises and the excess interest assigned to Whitson Company "shall automatically revert to Bluff Creek Oil Company without the necessity of the execution and delivery of additional instruments * * * and the parties hereto shall thereafter own the leasehold estate equally, subject to the overriding royalty interest reserved to R. H. Rucker, Jr."

Thereafter, on October 13, 1949, Bluff Creek executed an instrument reciting the amount which had been expended by Whitson Company and agreeing that after the recovery thereof, plus operating costs, Whitson Company should receive "out of fifteen-thirty-seconds of six-eighths (15/32 of 6/8) the additional sum of $18,577.00, together with one-half of the operating expenses of the lease during the effective period of this assignment." That instrument contained these provisions:

"It is expressly understood and agreed that payments hereunder shall commence effective immediately upon the payment of the balance of the drilling and operating costs of the Fenoglio well as provided in the assignment heretofore executed, and shall continue until the sum due hereunder shall have been paid, without interest.

"The assignment heretofore executed by Bluff Creek to Whitson Company provides for the equalization of payments to the parties respectively, Bluff Creek having reserved 1/16 of 7/8 [sic] as a direct payment to it during the discharge of the obligation for drilling and operating costs, and it is hereby agreed that the equalization of the account and the recovery by Whitson Company of the sums so paid to Bluff Creek shall be deferred until the full and final payment and discharge of the oil payment hereby created.

* * * *

"Assignor, Bluff Creek Company, reserves the right at any

time to reimburse assignee for all sums expended or advanced by it, as hereinabove provided, and thereupon to become vested with an undivided ½ interest in the oil and gas leasehold estate."

That contract is a recognition by Bluff Creek that it and Whitson Company owned equal interest in 6/8 of the lease. To secure Whitson Company in the payment of an additional indebtedness of $18,577.00 Bluff Creek assigned to it the proceeds from the sale of 15/32 of 6/8 of the oil, gas and other minerals. By the instrument of August 31, 1949, Whitson Company was assigned a 15/16 of 6/8 interest in the proceeds. To hold that by the later contract that interest was reduced to 15/32 would be to hold that Whitson Company was accepting a smaller share of the proceeds to secure an increased indebtedness. The 15/32 interest assigned by the contract must have been out of Bluff Creek's ½ or 16/32 of 6/8, leaving it but 1/32 thereof.

As we construe that instrument, it provides that after all expenditures for developing and operating the lease have been received by Whitson Company from 15/16 of 6/8 of the production, then Whitson Company shall receive 31/32 of the proceeds until it shall have received $18,577.00, and while receiving 31/32 it shall be liable for only ½ the costs of production, and Bluff Creek shall be liable for the other ½.

Construing all these instruments together, the rights of the parties with respect to the proceeds of the oil produced from the well were as follows: Whitson Company should receive 15/16 of 6/8 of the proceeds and Bluff Creek an overriding royalty of 1/16 of 6/8 until Whitson Company has been paid the unpaid balance of its expenditures for drilling and operating the well in excess of operating costs, which it was stipulated amounted to $34,430.84 at the time the well was destroyed. If the well was still producing when that obligation was discharged, then Whitson Company should receive 31/32 of 6/8 of the proceeds and Bluff Creek 1/32 thereof, each party bearing one-half of the costs of operation and production; these rights to continue until Whitson Company shall have received $18,577.00. If that obligation should be discharged and the well should still be producing, then Whitson Company should receive the full 6/8 of the proceeds and Bluff Creek receive none of them until Whitson Company should receive above operating costs an amount equal to the entire amount theretofore paid Bluff Creek on its overriding royalty. If the well should still

be producing, then the parties would own the leasehold estate equally, subject to the overriding 1/8 royalty owned by Rucker.

From this background we turn to the history of the well. It is disclosed that it was completed in 1949 and produced oil in paying quantities under the direction of Bluff Creek. In the fall of 1951 and January, 1952, the well began producing large quantities of water with the oil. That condition was corrected by Bluff Creek, but when it recurred in April, 1952, its efforts to restore the production failed. The general manager of Bluff Creek testified that Mr. Whitson came to the well when it was in that condition and took over its management and put padlocks on it. Two months later the Bluff Creek manager voluntarily told Whitson to "go in and see what luck they could have." In an effort to bring the well back into production, Whitson caused torpedo jets to be discharged in the well. This did not bring the well back into production, and Whitson caused the casing to be pulled and moved off and abandoned the project, resulting in the termination of the lease.

Bluff Creek and Rucker joined in this suit against Whitson Company and L. R. Whitson, individaully, seeking damages for negligent destruction of the well and the loss of the lease. In response to special issues the jury found that Whitson Company was negligent in discharging the particular jets used by it, and that such negligence was the proximate cause of the loss of the well. It assessed Bluff Creek's damages at $50,000.00, but this was reduced in the judgment to $35,000.00, which corresponds to the amount alleged in the petition. Rucker's damages were found to be $8,333.00, but that amount was reduced to $8,000.00 to correspond with the amount alleged in the petition.

■ We consider first the application of Bluff Creek. Its contention is that the judgment of the trial court in its favor against Whitson Company for $35,000.00 should be affirmed. The trial court submitted to the jury the issue of the reasonable cash market value of the 6/8 leasehold estate just prior to the commencement of the last remedial work on the well by Whitson Company. The Court of Civil Appeals held that it was error to permit Bluff Creek to recover the value of the lease without reference to the claims of Whitson Company, and remanded the cause to be submitted at the market value of the lease burdened with the charges of Whitson Company. That court adopted Bluff Creek's view that Whitson Company had a mere option which it never exercised. With that conclusion we cannot agree. Whitson Company fully discharged the obligations which it as-

sumed in its contract with Bluff Creek. It was under no obligation to operate the well, and did not operate it. White and Webb Drilling Company seems to have faded out of the picture, and Bluff Creek became the operator. When Whitson Company fulfilled its obligations under its contract with Bluff Creek it had at least an equitable title to a one-half interest in the oil lease, subject to Rucker's overriding royalty, with a right to appropriate the major portion of the proceeds from Bluff Creek's one-half interest as outlined above.

This is not a suit for title. The lease has terminated. It is not necessary, therefore, for us to determine the exact nature of the interests of the parties thereto. The rights of Whitson Company do not rest upon a determination of whether the instruments conveyed to it a legal title, equitable title, or merely a beneficial interest in the lease. They clearly conveyed an interest in the lease and it was error, as held by the Court of Civil Appeals, to submit the case just as if Whitson Company had no interest in it.

■ In view of the great complexity of the provisions of these different instruments, their interpretation should not be left to a jury. In submitting this phase of the case on another trial, the court in its charge should construe these instruments as we have construed them above, and call upon the jury to determine the value of Bluff Creek's interest in the well. If the evidence discloses that there was a market value for such an uncertain and indefinite interest, then it would be proper to submit market value. If it should be established that there was no market value for such interest, then actual value should be submitted, based upon estimated future production less the estimated expenses of production.

■ We consider next the application of Whitson Company. Its contention that judgment should be rendered that Bluff Creek take nothing cannot be sustained. Its position is that the claims of Whitson Company exceeded the value of the leasehold estate as found by the jury, and that therefore they should be offset against that value, leaving no value at all in Bluff Creek. The weakness of that argument lies in the fact that those expenses ould not be offset against Bluff Creek's overriding royalty. It matters not how much Whitson Company may have expended in this enterprise. Its claims are chargeable only to a fraction of the production, and Bluff Creek was entitled to an overriding oyalty against which no claims for expenses could be charged. ince Whitson Company negligently destroyed that right, it is

elementary law that it is liable to Bluff Creek for the value thereof.

■ Whitson Company also contends that the Court of Civil Appeals erred in affirming the judgment in favor of Rucker for $8,000.00 as the market value of his 1/8 overriding royalty. The contention is that the jury's findings of the market value was based upon damages growing out of the termination of production from the zones into which the well had been drilled and from Whitson Company's failure to make further exploration to develop lower horizons. To understand this contention it should be stated that the jury found in its answer to special issues that there were horizons capable of producing oil in paying quantities which were separate and apart from the horizon from which the well had been producing; that by the exercise of ordinary diligence Whitson Company should have known of such other horizons, that it did not test same, and that by the exercise of ordinary diligence it would have tested them. Whitson Company does not contend that Rucker was not entitled to any compensation for the negligent destruction of the well. It recognizes his right to compensation for the loss sustained by the destruction of the sand from which the well had been producing. It does not claim that the trial court erred in any ruling regarding the pleadings of the evidence. It points out no error committed by the trial court in its rulings. Its argument is that " * * * it was the duty of the trial court to measure separately the liability arising from the two acts, of one of which respondent Rucker had no right to complain, and judgment could not be rendered upon a verdict finding damages arising from the combination of the two." No request was made in the trial court for a separate submission of issues. No instructions were requested regarding the factors which the jury might consider in measuring market value. The only objection made by it to the special issue submitting market value other than that Rucker had parted with his interest, which objection is not briefed, was this: "Because said issue does not inquire as to the proper measure of damages." That general objection cannot be considered. If the market value as submitted was not the correct measure of damages, objection should have been made to the issue by Whitson Company pointing out distinctly the grounds of its objections. Rule 274, T.R.C.P. Having failed to do so, it cannot thereafter be heard to say that the measure of damages as submitted was improper. There is no way for this court to determine that the jury included damages for failure further to develop in its answer to the plain issue calling only for a

determination of the market value of Rucker's overriding royalty. We cannot reverse the trial court's judgment on such assumption or surmise.

What has been written has reference only to a lease known as the Fenoglio lease. Another lease, known as the Nabours lease, is involved in the litigation, but the only question presented here with reference to it is the claim of Bluff Creek that the Court of Civil Appeals erred in dissolving the injunction of the trial court restraining Whitson Company from disposing of any property or equipment on that lease and from interfering with its operation. We approve that action of the court and see no reason for writing further on the question.

The judgment of the Court of Civil Appeals is affirmed, but on a retrial the court will be guided by this opinion.

Justice McCall not sitting.

Opinion delivered June 27, 1956.

Rehearing overruled Oct. 3, 1956.