McCRELESS PROPERTIES, LTD., et al., Appellants,

v.

F. W. WOOLWORTH COMPANY, Appellee.

No. 15498.

Court of Civil Appeals of Texas, San Antonio.

Feb. 11, 1976.

Rehearing Denied March 10, 1976.

**864**

Damon Ball, J. Michael Myers, Groce, Locke & Hebdon, San Antonio, for appellants.

Emerson Banack, Jr., Edward Kliewer, III, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellee.

BARROW, Chief Justice.

Appellee, a tenant in a large shopping center owned by appellants, McCreless Properties, Ltd., and the two general partners thereof, G. S. McCreless and Robert E. Durr, brought this suit to recover for damages sustained as a consequence of the collapse of a portion of the roof over appellee's store. The jury found that the collapse of the roof was a proximate result of appellant's failure to make repairs, and that the sum of $58,800.00 would fairly and reasonably compensate appellee for its damages. Both parties moved for judgment, and appellants also moved for judgment non obstante veredicto. Judgment was rendered that appellee recover from appellants the sum of $37,209.92. The parties will hereinafter be referred to sometimes as Tenant and Landlord.

Landlord has timely perfected this appeal with six points of error. Two points assert that a take nothing judgment should have been entered because its liability was limited under the terms of the written lease agreement to the cost of repairs of the

defective roof. Landlord urges by one point that recovery for breach of any contractual duty to repair is barred by the four-year statute of limitations. Its final three points complain that Tenant failed to prove a proper measure of damages in that there was no evidence of the market value of the damaged merchandise before or after the collapse of the roof. Tenant urges by a cross point that the trial court erred in limiting its recovery to $37,209.92.

On November 30, 1959, the parties entered into a lease agreement prepared by Tenant whereby it agreed to lease as a primary tenant a portion of a large shopping center to be constructed by Landlord. Landlord entered into a construction agreement with Phil Lloyd Shoop, and Noonan & Krocker, architects and engineers, in May of 1960 and with Guido Brothers Construction Company on June 29, 1961. Construction was completed by Guido Brothers, and the final certificate for payment issued by the architects on April 2, 1962. The shopping center consists of ten connected buildings, all joined by a common mall. A total of 500,000 square feet are in the center, 20,000 of which are leased to Tenant. Most of the center consists of one-story connected buildings with a flat roof, which was designed with about a five-inch slope from the west to the east to take care of drainage from the roof. The fatty clay soil under the center shifts as the moisture in the clay varies, and this shifting caused some minor leaks in the roof almost from the outset. The shifting soil also disturbed the planned drainage of the roof over Tenant's store and resulted in ponds of water accumulating after each rainfall. One such pond would form in a saucer-like sag of the roof around a large air conditioning unit over Tenant's store. In 1969 substantial damage resulted to Tenant from a leak under this pond and required the replacement of several acoustical tiles in the ceiling of the store. Following this damage, Mike Urtiaga, Landlord's maintenance foreman, installed a four-inch drain in the roof near the low spot of the pond around the air conditioning unit. In 1971 there was another leak at this area which did significant damage. Following this incident, Mr. Urtiaga patched the roof in several places with hot tar. On September 26, 1973, a heavy rain fell, and at about 9:30 p. m. the roof under the air conditioning unit collapsed and fell into the store along with substantial water, causing the damage which brought about this suit.

Article 16 of the lease relates to "repairs" and provides in part:

> The Landlord agrees to make and pay for (a) all repairs, structural or otherwise, to the exterior of the building on the demised premises . . . and (c) all repairs, structural or otherwise, to the interior of the demised premises made necessary by acts of God and the elements and leakage or flowing of water and steam into the demised premises.

Article 12 sets forth "Tenant's Right to Cure Landlord's Defaults" and provides in part that if the

> Landlord fails to make any repairs or do any work required of the Landlord by the provisions of this lease, . . . then and in any such event or events the Tenant, after the continuance of any such failure or default for ten (10) days after notice in writing thereof is given by the Tenant to the Landlord, may . . . cure such defaults all on behalf of and at the expense of the landlord. . . .

Under Article 8, Tenant was granted the right, at his own expense, to make such alterations, additions and changes, structural or otherwise, in and to the demised premises as it found necessary or convenient.

Landlord urges that since Tenant had the right to make all necessary repairs upon the failure of Landlord to do so, and to collect the cost thereof, Landlord is not liable for any consequential damages or losses of Tenant, but is liable only for the cost of repairs. In support of this proposition, Landlord cites *Hamblen v. Mohr*, 171 S.W.2d 168 (Tex.Civ.App.—Galveston 1943, writ ref'd

w. o. m.) and *McCrory Corporation v. Nacol,* 428 S.W.2d 414 (Tex.Civ.App.—Beaumont 1968, writ ref'd n. r. e.).

Both of these cases involved suits for personal injuries by an invitee against a tenant-store owner wherein recovery was sought from the landlord for an alleged breach of his obligation under the contract to make repairs. The following rule was recognized as a basis for denying liability in those two cases against the landlord:

> The general rule was that the tenant took the premises as they were. When the landlord covenanted to repair, an exception to the general rule was created, and he was thereby rendered liable. *But if the covenant to repair be limited* to making such repairs as the tenant shall demand be made, and the right given the tenant to make the repairs, if the landlord declines to make then, and to pay for them at the expense of the landlord, then the duty of the tenant to repair is restored, except that he can deduct the cost of such repairs from his rent. (Emphasis ours)

This rule is inapplicable to the lease agreement between these parties under the facts of this case. In the first place, Landlord's obligation to make repairs to the demised premises is not limited to such repairs as the Tenant shall demand be made. Tenant's option to repair at Landlord's expense is not operable until Tenant makes a written demand upon Landlord, but Landlord's obligation to repair is in no way limited or restricted. Secondly, there was never a refusal by Landlord to make repairs. To the contrary, Landlord inserted a drain in the roof and assured Tenant that such repairs would correct the situation which had resulted in substantial water damage in 1969.

We have been unable to find a case involving the contractual rights between a tenant and landlord in a large shopping center with a number of tenants in connected space. Nevertheless, it is logical that the landlord's obligations with respect to areas of common use in a shopping center,

such as the roof over the center, would be the same as any other situation where the landlord retains possession and control of common areas in multiple tenant structures. The applicable rule would be that set forth in *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex.1963), wherein it was held that, where a landlord retains possession or control of a portion of the leased premises, he is charged with the duty of ordinary care in maintaining the portion retained so as not to damage the tenant.

Not only did Landlord have the obligation to repair the roof in the absence of an agreement to the contrary, but it specifically agreed to make all repairs to the exterior of the building on the demised premises and undertook to do so in this case. The agreement does not limit Landlord's obligation to make only such repairs as Tenant demanded, nor does it limit Landlord's liability for failure to make same. Landlord's first and second points are overruled.

Appellants urge by their third point that the trial court erred in denying their motion for judgment non obstante veredicto in that any recovery based upon Landlord's breach of its contractual duty to repair was barred by the four-year statute of limitations as a matter of law. This contention is largely based upon the assumption that the necessity for repairs to the roof arose because the building was not constructed in accordance with the plans and specifications. Tenant alleged as one cause of action, and introduced evidence in support thereof, that contractor placed a single steel joist in the roof under the air conditioning unit instead of double joists as provided in the plans. There was evidence that the single joist was adequate to support the unit. No issue was submitted or requested regarding the result of the failure of the contractor to provide double joists under the unit. On the other hand, there was evidence that the sag in the roof and the ponding of the water was caused by the shifting of the soil under the building and that this deteriorating situation called for repairs in 1971 to correct the improper drainage.

The jury found that Landlord failed to make such repairs and that this was a proximate cause of Tenant's damage. The finding that repairs were necessary in 1971 is apparently based upon the evidence that all parties believed the installation of the drain in 1969 was sufficient. This mutual assumption proved incorrect, and substantial damage was again sustained by Tenant from a heavy rain in 1971. This damage demonstrated that additional repairs were necessary. Landlord did not object to the submission of the issue inquiring as to the earliest date repairs should have been performed, and does not now say that there is no evidence to support the jury's affirmative finding that further repairs were first required in 1971. We cannot say that Tenant's claim is barred by the four-year statute of limitations as a matter of law. Appellant's third point is overruled.

Both parties complain of the judgment insofar as the amount of damages awarded Tenant. Only one issue was submitted although the issue refers to two types of damage, and predicates each type by a different test. Question No. 6 asks:

> What sum of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiff for the damages to the plaintiff's merchandise, fixtures and appliances, and the reasonable and necessary expenses incurred by the plaintiff as a result of the collapse of the roof on September 26, 1973?

The jury found: "$58,800."

The trial court sustained Landlord's motion for judgment non obstante veredicto in part and assessed the damages at $37,299.00. This amount is based on the amount of damages to Tenant's merchandise, fixtures and appliances as shown by uncontradicted exhibits.

Landlord complains of the judgment because there was no evidence of the reasonable market value of the damaged merchandise, fixtures or appliances either before or after the collapse. It further complains that an improper measure of damages was submitted to the jury. The evidence on the question of damages was very minimal and consisted almost entirely of the introduction into evidence without objection of four exhibits prepared under the supervision of Tenant's regional merchandise manager. Three of these exhibits reflect the cost to Tenant of the damaged merchandise as shown by an inventory following the collapse of the roof less the amount realized from a sale of the salvage. Another exhibit lists the amounts expended by Tenant for salaries and other expenses in connection with the incident.

Landlord recognizes that these exhibits were received into evidence without objection and that no objection was made to the submission of Question No. 6. It urges, however, that complaint was timely made by its motions for judgment and for judgment non obstante veredicto. Rule 279, Tex.R.Civ.P., provides in part that:

> A claim that the evidence was insufficient to warrant the submission of any issue may be made for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party.

We are concerned here with an improper measure of damages. There is sufficient evidence to raise the issue that Tenant's merchandise was damaged by the collapse of the roof. The amount of this damage was supported by the exhibits which showed Tenant had been damaged in the amount of $37,209.92. Landlord may not now complain of the submission, without objection, of an improper measure of damages. Rules 272 and 274, Tex.R.Civ.P.; *Whitson Company v. Bluff Creek Oil Company*, 156 Tex. 139, 293 S.W.2d 488 (1956); *Employment Advisors, Inc. v. Sparks*, 368 S.W.2d 199 (Tex.1963); *Pool v. Dickson*, 512 S.W.2d 68 (Tex.Civ.App.—Tyler 1974, no writ). Landlord's points complaining of the damage awarded in the judgment are overruled.

A different situation is presented by Tenant's cross point complaining of the trial court's action in striking the "reasonable and necessary expenses incurred by the plaintiff." There was no evidence that the amounts expended by Tenant for salaries and other expenses following the collapse of the roof were reasonable. These items are listed on the exhibit introduced into evidence. Some have an explanation from which it might be inferred that they were necessary as a result of the incident; however, there is no evidence that any of such amounts were reasonable. Although submitted without objection, Landlord did not waive its right under Rule 279, *supra,* to complain by its motion for judgment non obstante veredicto that there was no evidence to support the findings as to the reasonable and necessary expenses incurred by Tenant. The trial court did not err in striking these amounts as shown by the exhibits from the finding of damage.

The judgment of the trial court is affirmed.