Jean Marie ST. GELAIS, Transoil Rig
Equipment, Inc., Standard Systems &
Technology, Inc., and International
Equipment & Financial Services, Ltd.,
Appellants,

v.

Ocie JACKSON and Jerry
Dowdy, Appellees.

No. C14–87–00039–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 17, 1988.

Rehearings Denied Feb. 9 and
March 16, 1989.

Roy L. Cordes, Jr., Ben W. Childers, Sugar Land, Anthony J. Sadberry, Paul R. Duplechain, Phillip R. Livingston, Houston, for appellants.

B. Edward Williamson, Michael J. Mazzone, Houston, for appellees.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

Three groups of appellants challenge a judgment awarding appellees Ocie Jackson and Jerry Dowdy actual and punitive damages, attorneys fees and interest.

Appellants Jean Marie St. Gelais and Transoil Rig Equipment, Inc., bring 33 points of error. Appellant Standard Systems & Technology, Inc., brings 15 points of error. Many of these points are similar and will be discussed together. Appellant International Equipment & Financial Services, Ltd., against whom a default judgment was entered for failure to answer, brings two points of error alleging (1) that the trial court abused its discretion in denying International's motion for new trial because substituted service was improper and (2) that the evidence was insufficient to support the damages adjudged against it.

■ We first address International's contentions. International, a foreign corporation, was served with notice of this suit through the Secretary of State under the provisions of the Texas long arm statute, V.A.T.S. art. 2031b(3), now § 17.041 et seq. of the Texas Civil Practice and Remedies Code. In its motion for new trial, International challenged the sufficiency of plaintiffs' pleadings that it was "doing business" in Texas within the meaning of the statute. However, it made no proof in the trial court of the allegations raised in its motion. Therefore the record before us fails to dispute plaintiffs' jurisdictional pleadings which, on their face, are sufficient to support the substituted service.

■ International's motion for new trial also contends that its ownership of real property in Texas does not constitute sufficient contacts to support in personam jurisdiction. In direct contradiction to that position, International now asserts that it does do business in Texas and further claims that it maintains a "regular place of business" here by virtue of its ownership of that same real property, a condominium unit in a high-rise building. It then attacks the propriety of substituted service under section three of art. 2031b, alleging that the on-premises manager of the condominium should have been served under section two of the statute. By its failure to raise this argument in its motion for new trial, International has failed to preserve this complaint for review by the appellate courts. Rule 52(a), Tex.R.App.P. The default judgment rendered against it on the plaintiffs' pleadings was proper. This judgment, which was merged into the final judgment, specifically imposes a constructive trust on the real property bought by St. Gelais in International's name, grants plaintiffs an equitable lien on the property, forecloses that lien and orders the property sold and the proceeds applied to reduce the judgment after payment of all costs of the sale. The trial court's judgment in this regard is affirmed.

■ International's second point of error contests the sufficiency of the evidence to support an award of money damages against it. International's liability for civil conspiracy was determined by default. A default judgment against St. Gelais also established International's status as his alter ego. International was then held jointly and severally liable with the other defendants for the actual damages awarded to the plaintiffs. There were no findings of exemplary or additional damages sought against International and none were adjudged. We find that by virtue of the default judgments rendered in the case, the

actual damages proved at trial were sufficient to support judgment against International for actual damages. International's liability as to conspiracy was already established by default. The jury found the remaining defendants also liable on the conspiracy theories and awarded actual damages caused by the civil conspiracy. Having proven the damages as the conspiracy itself, plaintiffs were not obigated to prove the same damages separately against International. The judgment against International is affirmed.

A rather detailed summary of pretrial proceedings is necessary to adequately discuss several points of error raised by St. Gelais, Transoil and Standard Systems attacking the trial court's rulings on pre-trial motions. A summary of evidence presented at trial will come later in this opinion.

Appellees filed plaintiffs' original petition in early September 1984 and a Third Amended Original Petition October 4, 1985, naming seven defendants. All of the corporate defendants were directly or indirectly related to defendant St. Gelais. St. Gelais was the sole owner and officer of defendant Transoil Rig Equipment, Inc. (Transoil). Transoil owned 100 percent of the stock of defendant Hemisphere Investment Corp. (Hemisphere). Hemisphere and others purchased all of the capital stock of defendant Standard Drilling Co. (Standard Drilling) December 1, 1982. Appellees contend this purchase was financed by St. Gelais. In April 1983 defendant Standard Systems & Technology, Inc., (Standard Systems) acquired substantially all of Standard Drilling's assets and liabilities through an exchange of stock and a reverse stock split.

Appellees sought to hold the defendants liable for damages for fraud, deceptive trade practices, breach of lease contracts, and conspiracy. They also alleged liability under theories of de facto merger and alter ego that allow setting aside the corporate form of business entities. Appellees alleged that St. Gelais used proceeds of the fraud to acquire the condominium in Houston in International's name and sought imposition of a constructive trust on that property.

On October 28, 1985, the trial court signed an order granting appellees an interlocutory default judgment on liability against St. Gelais and Hemisphere as a sanction for repeated discovery abuse. While contesting certain related procedural rulings by the court, St. Gelais does not directly challenge the validity of the default judgment.

In December 1985, two severances occurred. The suit against Standard Drilling was severed into Cause No. 84–23843–A (the "A" case) because Standard Drilling was then in bankruptcy. St. Gelais and Hemisphere were severed into Cause No. 84–23843–B (the "B" case) so that a trial on damages could proceed against them. St. Gelais and Hemisphere opposed the severance.

On Monday February 24, 1986, the "B" case came up for trial on damages. At that hearing defendants St. Gelais and Hemisphere moved for continuance for two reasons: (1) they had requested a jury but a non-jury trial had been set and (2) Standard Drilling had the previous Friday filed a petition seeking to have the entire case removed to federal bankruptcy court in Oklahoma. The trial court granted the continuance and ordered that upon resolution of the removal issue and upon motion by either side, the matter of damages would be tried as soon as possible before a jury. The court, on its own motion, also found that defendants Hemisphere and St. Gelais and their attorney had again abused the Texas civil justice system and imposed monetary sanctions against all three in the amount of $17,050.

According to docket sheet entries, on June 24, 1986 a pre-trial conference was held and the "B" case against St. Gelais and Hemisphere (for damages only) was preferentially set for trial. The docket sheet does not indicate the trial date. Appellees contend that the trial date was later set for the week of August 25, 1986 and that notice of the setting was mailed by the clerk's office before July 24. A copy of the notice is not in our record.

On July 18, 1986, the attorney for St. Gelais and Hemisphere moved to withdraw

as counsel on grounds of a conflict of interest because his clients refused to pay the $17,050 sanction, refused to indemnify him for the sanctions judgment, and refused to pay his fees. He alleged that his withdrawal was mandatory since he might, in his own defense on the sanctions matter, be forced to reveal privileged information. He also alleged that he had requested his clients' consent to his withdrawal which had been refused. His motion was granted July 30, 1986, almost one month prior to trial.

On July 28, 1986, the same attorney moved to withdraw from representation of defendants Transoil and Standard Systems in the main case (No. 84–23843) and set the motion for hearing August 11, 1986. On August 6, 1986, plaintiffs moved to certify the main case for trial and to consolidate it with the "B" case for trial purposes only. Both motions were granted at the hearing August 11, 1986. The attorney for Transoil and Standard Systems was allowed to withdraw and the consolidated cases were set for trial the week of August 25, 1986. Docket call was set for August 22.

On August 20, 1986, one week prior to trial, Ben W. Childers and Roy L. Cordes, Jr., new attorneys for St. Gelais, Transoil, Standard Systems, and Hemisphere, filed motions for continuance in both the "B" case and the main case. The sworn motions stated that on August 12 the clients had received a letter notifying them of withdrawal of prior counsel and on August 19, 1986 the new attorneys had agreed to represent the four defendants. Apparently separate counsel for St. Gelais and Transoil was engaged sometime after August 20, 1986 because another attorney appeared on behalf of these defendants on August 27.

On August 26, 1986, plaintiffs learned that Hemisphere was planning to file bankruptcy. On their motion, the court consolidated the actions against St. Gelais with the main case for trial purposes, leaving Hemisphere as the sole defendant in the "B" case, so that Hemisphere's automatic bankruptcy stay would not affect the suit against St. Gelais. Hemisphere did file bankruptcy the morning of August 27.

The main case, now with St. Gelais, Transoil, Standard Systems, International and Erling Larsen as defendants, was called for trial August 27, 1986. The entire morning of August 27 was devoted to hearing the defendants' motions, including the August 20 motion to continue. All the motions were denied. On August 28, 1986, default judgments against defendants Erling Larsen and International were granted for failure to answer and jury selection began.

The granting or denial of a motion for continuance is within the trial court's sound discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986); *State v. Crank*, 666 S.W.2d 91, 94 (Tex.1984). The trial court's action will not be disturbed unless the record discloses a clear abuse of discretion. *Id.* When the ground for the continuance is the withdrawal of counsel, movants must show that the failure to be represented at trial was not due to their own fault or negligence. *State v. Crank*, at 94; *Villegas* at 626.

Appellants contend that by allowing their attorney to withdraw shortly before trial and then refusing to grant a continuance, the trial court did abuse its discretion. We do not agree.

The situation in *Villegas* is distinguishable from the circumstances of the case before us. Villegas' attorney was permitted to withdraw only two days prior to trial and when he appeared for trial two days later, Villegas was unrepresented by counsel. There was no evidence in the record that Villegas' actions had caused his attorney to withdraw. In fact, the appellate court affirmatively found that "Villegas was not negligent or at fault in causing his attorney's withdrawal." He had learned of the request to withdraw only six days before trial and had contacted another attorney to represent him right away. However, after obtaining the court's permission to withdraw, his first counsel refused to turn over Villegas' file and important evidence to the attorney Villegas had attempted to retain in his place. Rather than grant a continuance under these circumstances, the court proceeded to trial with

Villegas pro se. This action was held to be an abuse of discretion.

■ In the case before us, the conduct of the defendants in refusing to pay the sanctions or indemnify counsel clearly was instrumental in the attorney's decision to withdraw from the case. The procedural history of the case indicates a pattern of obstructionist tactics on the part of St. Gelais and Hemisphere. One motion for continuance had already been granted in favor of those defendants. Two bankruptcies were filed by corporations deemed to be the alter ego of St. Gelais, and, in conjunction with one, defendants improperly sought removal of the entire case to Oklahoma. Most significantly, the trial court had *twice* imposed severe sanctions against St. Gelais and Hemisphere for their continuing abuse of the judicial system. Following judgment, the court held St. Gelais, Standard Systems and Transoil in contempt for their refusal to comply with the court's post-judgment orders. This record, taken as a whole, indicates that the fault of the defendants was instrumental in the withdrawal of their counsel.

In addition, the time frames involved were not nearly so crucial as those in *Villegas.* The case was set for trial the week of August 27, 1986. The attorney for St. Gelais and Hemisphere moved to withdraw on July 18, 1986. In that sworn motion he stated that he had sought but was denied permission from his clients to withdraw. Therefore, we may presume that the client had knowledge of the attorney's intentions prior to July 18. The motion was granted on July 30, 1986, almost one month before the trial date. While St. Gelais claims not to have received actual notice of the granting of the motion until August 12, he was aware of the possibility of that event considerably sooner. We believe that the exercise of true diligence would have included some attempt on the client's part to obtain such vital information sooner. Finally, new counsel was retained at least a week before trial. Unlike Villegas, defendants were not pro se when the case was called.

We therefore hold that appellants have failed to demonstrate an abuse of discretion by the trial court in the denial of their motion. Points of error one and two brought by Standard Systems and point of error three brought by St. Gelais and Transoil are overruled.

We next consider several points of error brought by St. Gelais which revolve around the fact that plaintiffs had obtained a default judgment "as to liability" against him as a sanction for discovery abuse. After entering judgment by default, the court ordered "that Plaintiffs have and recover of and from Defendant Jean Marie St. Gelais such relief and damages as may be proved upon the final trial of this cause."

■ In his first point of error St. Gelais contends that the trial court erred in failing to set aside the interlocutory default judgment against him. It is his contention that he was somehow prejudiced by the fact that, while keeping the default judgment in place, the trial court permitted plaintiffs to submit to the jury evidence of and issues on liability. However, appellant neither cites relevant authority nor demonstrates how he was harmed by this situation. While he claims that by virtue of the default he was prevented from presenting a defense to liability, he includes no record references indicating that his counsel was denied the opportunity to cross-examine witnesses, contest admissibility of evidence, or present evidence on his behalf. To avoid prejudice, the jury was not informed about the default judgment. Appellant St. Gelais therefore has not shown harm.

■ St. Gelais also argues that appellees waived the default judgment when they included issues in the charge asking the jury to find whether St. Gelais was liable under the various causes of action pleaded and presented. We disagree. At the charge conference counsel for appellees stated that they were not waiving the interlocutory default judgment by submitting issues relating to St. Gelais. The trial court implicitly accepted this reservation of rights. We explicitly accept it. If, on appeal, St. Gelais had successfully contested the validity of the interlocutory default judgment, appellees would have had to re-

litigate both liability and damages at a whole new trial. Appellees properly protected themselves from this possibility by submitting issues on St. Gelais's liability. Point of error one is overruled and the interlocutory default judgment rendered against St. Gelais which was merged into the final judgment is affirmed.

Because St. Gelais' liability was established by the default judgment, points of error four through twelve contesting the legal and factual sufficiency of evidence to support the findings that St. Gelais entered into a civil conspiracy and defrauded appellees are without merit and are hereby overruled.

St. Gelais has also raised points questioning the legal and factual sufficiency of evidence to support the jury's findings that he was the alter ego of the other defendant corporations and Standard Drilling Company. (Standard Drilling was in bankruptcy at the time of trial and was not tried with the other defendants although issues on its liability and proportionate share of damages appropriately were submitted to the jury.)

■ Appellees argue that the default judgment precludes St. Gelais from challenging these findings on appeal. They argue that he has defaulted not only on fact issues regarding direct liability but also on issues of liability for the conduct of those companies alleged to be his alter egos. We agree.

The default judgment was entered because St. Gelais failed to obey court orders compelling production of documents requested by appellees in their attempt to discover evidence relevant to their pleadings of conspiracy, fraud and alter ego. If, after this default judgment on liability, appellees were required to establish liability by proving the elements of the torts and the factors of alter ego, then imposition of the sanction would be meaningless.

*Equinox Enterprises, Inc. v. Associated Media Inc.,* 730 S.W.2d 872 (Tex.App.—Dallas 1987, no writ), addresses the proper disposition of the alter ego issue in its review of a default judgment rendered as a sanction for discovery abuse. The plaintiffs in *Equinox* named a corporation and two individuals, Blake and McCauley, as defendants and specifically pleaded that the corporate defendant, Equinox, was an alter ego of the individuals. Judgment was entered by default against Blake, McCauley, and Equinox jointly and severally.

In affirming the default judgment, the Dallas court pointed out that alter ego is a theory under which individual liability may be imposed when it would not otherwise exist. *Equinox Enterprises, Inc.,* 730 S.W.2d at 877. Whether a person is the alter ego of a corporation is determined from the presence or absence of several factors. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986). The existence or absence of these factors is a fact issue for the trier of fact. *Id.* Plaintiff's pleadings brought into issue fact questions of liability, which were then determined in favor of the plaintiff when the interlocutory default judgment was entered against the defendants. The default judgment thus included judgment on the alter ego theory and was held sufficient to support a joint and several judgment against Equinox and the individuals.

The same result is appropriate in our case. The trial court held that the liability of St. Gelais as pleaded by plaintiffs was established, and we should give effect to that unchallenged holding. In addition to the evidence presented at trial, which was sufficient to support a finding of alter ego, the default judgment established appellees' allegations that Standard Drilling, Transoil, Standard Systems, Hemisphere, and International were alter egos of St. Gelais. Therefore, St. Gelais' points of error 16, 17, 18, 19, 20 and 21 and Standard Systems' points 3, 4, 5, and 6 are without merit and are overruled. The default judgment on liability supports that part of the judgment that holds St. Gelais jointly and severally liable with the corporate defendants.

In regard to the transactions which form the basis of plaintiffs' suit, the following facts were presented at trial. The suit arose from three investments involving several parties. Plaintiffs Jackson and Dowdy were investors. Affiliated Com-

mercial Services, Inc. acted as middleman in bringing together the investors with Defendant Transoil, a vendor who owned workover/completion rigs, and Defendant Standard Drilling, a lessee who wanted the rigs to use in its business. As previously pointed out, Standard Drilling was owned by Hemisphere Investment Corp. which was owned by Transoil which was owned by St. Gelais. These interrelationships were not revealed to the investors. Acting as the investors' agent, Affiliated purchased the rigs from Transoil and then leased them to Standard Drilling. Affiliated received a commission from the vendor upon completion of the sale, and also received a management fee from the investors for negotiating the lease agreements, collecting the rental income, and performing other services in connection with the leases. Title to the rigs was held by the investors.

Under this arrangement appellee Jackson purchased the Big T rig in March, 1982 and leased it to Standard Drilling March 4, 1982. Appellee Dowdy purchased the Wilson Mogul "42" (Wilson) rig and leased it to Standard Drilling December 23, 1982. Appellee Dowdy also bought and leased a second rig, Skytop Brewster, in August, 1983. In each transaction the purchase price of the rig was $588,000 and the lease was for a 66-month term at $12,995 a month, with an option to purchase at the end of the lease term.

Each Rig purchased by Jackson and Dowdy was delivered directly to Standard Drilling in Oklahoma by the manufacturer. Standard Drilling acknowledged acceptance of the rigs with Delivery and Acceptance Receipts. Each receipt contained a rig description and a listing of tools that supposedly came with the rig. Standard Drilling began missing payments on the leases in early 1984. Eventually Affiliated filed suit for replevin in Oklahoma and repossessed the three rigs.

An expert appraiser, Larry Perdue, testified that after the rigs were recovered, he had the rigs stored in Oklahoma in guarded facilities where he did inventories of each rig and listed the equipment that was missing. Perdue testified that the cost of replacing the missing tools and equipment was approximately $179,000 for the Big T, $105,000 for the Wilson Mogul, and $97,000 for the Skytop. He compared his expert estimate of the actual rental value of the rigs at the time he inspected them with the value of the rigs as represented by the vendor. Skytop Brewster was worth $5250 a month as represented, but $2650 as it was; Wilson Mogul was worth $5350 a month as represented, but $2700 as it was; Big T was worth $4950 as represented, but $2400 as it was. The appraiser also attempted to find buyers or lessees for the rigs, but had no success.

The manufacturer of the Big T rig, Oscar Taylor, testified that he was instructed by St. Gelais, owner of Transoil, to construct a workover rig using old parts provided by Standard Drilling and some new parts. The objective was to make the rig look new even though some parts were 20 years old. Taylor invoiced Transoil $125,323 for building Big T. At trial, Taylor testified that the description of the Big T rig provided in the lease documentation was not an accurate description of the rig he built, stating that "only the serial number" was correct. For instance, he pointed out that the description says the rig had a 96-foot mast when it actually had an 88-foot mast.

After recovering the rigs and discovering the discrepancies in the rig descriptions, the plaintiffs filed this suit alleging several causes of action against the various defendants and joint and several liability among them. The case was submitted to the jury on thirty special issues.

Appellants challenge the sufficiency of the evidence to support many of these findings. We review the evidence in keeping with the principles set out in *In re: King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) and *King v. Bauer*, 688 S.W.2d 845 (Tex.1985). Findings supported by any evidence of probative force will be upheld against a no evidence challenge. Findings will be upheld against a factual sufficiency challenge unless the evidence is so weak as to render the finding manifestly erroneous or unjust. The jury is the sole judge of the

credibility of the witnesses and the weight to be given their testimony. *Rego Company v. Brannon*, 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We also note that appellants' several points of error challenging the sufficiency of the evidence to support various jury findings do not provide record references as required by the briefing rules. Rule 74(d), Tex.R.App.P.

*Fraud*

■ In the first group of special issues (1, 2, 3) the jury found that St. Gelais, Transoil, and Standard Drilling committed fraud resulting in damages to plaintiffs in connection with the sale and/or lease of the rigs in question. We have previously held that the default judgment rendered against Hemisphere and St. Gelais established these allegations against those defendants. In addition, testimony at trial showed that the rigs represented by Transoil to be new and fully equipped were actually used, reconditioned and poorly equipped rigs. Further evidence indicated that St. Gelais fraudulently misrepresented "the true facts" of both the sale and lease transactions and fraudulently induced appellees to enter into both transactions as a whole. Standard Drilling and Transoil failed to disclose their common ownership and the possible conflicts of interest generated by that relationship. Because it was shown that the lessee, Standard Drilling, was not a separate, independent company unrelated to the vendor, Transoil, the jury was entitled to believe plaintiffs' allegations of fraud and fraudulent inducement. Based on our review of the facts adduced at trial, we hold that the evidence was sufficient to support the jury's findings of fraud on the parts of Transoil and Standard Systems. St. Gelais' and Transoil's points of error 4, 5, 6, 7, 8, 9, 10, and Standard Systems' points 7, 8, 9, 10, 11, are overruled.

*Civil Conspiracy*

■ In the second group of issues (4, 5, 6, 7, 8) the jury found there was a civil conspiracy among St. Gelais, Transoil, Standard Systems, Standard Drilling, and Hemisphere from which damages resulted.

Because it also found that each of these defendants acted willfully, the jury awarded exemplary damages. The evidence of the interrelationships between the various defendants was sufficient to support the jury's belief that St. Gelais and all the corporate defendants were acting in concert to defraud plaintiffs throughout the transactions in question. Absent a showing that the jury's answer is so contrary to the evidence as to be clearly wrong and manifestly unjust, it will not be set aside. *Thompson v. Wooten*, 650 S.W.2d 499, 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). St. Gelais' points of error 20 and 21, and Standard Systems' point 4 are overruled.

*Breach of Sales Contract*

■ In the third group of issues (9, 10, 11) the jury found that Transoil breached its contracts to sell the rigs and that appellees sustained damages as a result. There was extensive testimony that the rigs which were delivered did not match the descriptions of the rigs which were promised and which plaintiffs contracted to buy. The manufacturer himself admitted that old parts were made to look new and that the condition of the rigs was so misrepresented that only the serial numbers in the rig descriptions were accurate. This evidence was sufficient to support the jury's findings of breach of contract. St. Gelais' and Transoil's points 4, 5, 8, and 15 are overruled.

*Breach of Lease Contract*

Because it was uncontested that Standard Drilling breached its contracts to lease the rigs, this issue was not submitted to the jury. In special issue 12 the jury found damages resulting from breach of the leases. The damages found were in keeping with expert testimony. Therefore, they had sufficient support in the evidence.

*DTPA*

In the fifth group of issues (13, 14, 15, 16, 17, 18) the jury found that Transoil committed eight deceptive acts, as defined by the Deceptive Trade Practices Act, in connection with the sale of the rigs. Tex.

Bus. & Comm.Code Ann. § 17.46(b)(1), (2), (3), (5), (6), (7), (12), (23) (Vernon Supp. 1987). Next, the jury found that one or more of those acts was the producing cause of actual damages and that one or more of those acts was committed knowingly. The evidence reviewed above also supports these findings and appellants' points of error raised in this regard are overruled.

*Damages*

■ Appellants bring several points of error attacking the judgment entered against them as being based on an improper measure of damages. Since appellants wholly failed to object to the charge on these grounds they have waived this argument on appeal. *Wilgus v. Bond,* 730 S.W. 2d 670, 672 (Tex.1987); *Shell Oil Company v. Chapman,* 682 S.W.2d 257, 259 (Tex. 1984); *Whitson Company v. Bluff Creek Oil Company,* 156 Tex. 139, 293 S.W.2d 488, 493 (1956). All of appellants' points attacking the measure of damages used are therefore overruled.

■ Appellants next attack the sufficiency of the evidence to support the jury's findings of actual damages. In answer to the actual damages issues the jury found that Jackson was entitled to $596,863.90 and Dowdy to $897,485.30. These figures match the totals given by appellees' expert witness, Dr. Herbert Lyon, who testified as to the damages resulting from breach of the lease agreements. Dr. Lyon arrived at these totals by adding the amounts due for unpaid rent, plus accrued interest, to the amounts due for future rentals, adjusted to present value, and subtracting the fair market value of the rigs as determined by the expert witness Perdue. We have previously held that the evidence was sufficient to support these findings and the points of error attacking them are overruled.

■ In response to special issue number 17 the jury awarded Dowdy $1,800,000 and Jackson $1,200,000 in "additional" damages against Transoil under the DTPA. This issue incorrectly instructed the jury that it could award an additional amount not more than *three* times the actual damages. The Deceptive Trade Practices Act provides as follows regarding "additional" damages:

§ 17.50(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000;

This provision has been construed to allow for a maximum award, in the case of a knowing violation, of actual damages plus double the amount of those actual damages. *Jasso v. Duron,* 681 S.W.2d 279, 281 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Therefore, the instruction included in the additional damages issue was in error.

■ However, the trial court reduced the amount of additional DTPA damages against Transoil to only *two* times the actual damages ($1,193,727.80 to Jackson and $1,794,970.60 to Dowdy). A plaintiff may be allowed to elect the recovery he wants by waiving surplus findings with respect to damages. *Kish v. Van Note,* 692 S.W.2d 463 (Tex.1985); *Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 933 (Tex.App. —Houston [14th Dist.] 1982, writ ref'd n.r. e.). The additional damages thus were properly modified, limiting the amount according to Section 17.50(b)(1) of the Texas Business and Commerce Code. Any error in the wording of special issue 17 was rendered harmless.

In connection with the fraud and civil conspiracy findings, and in addition to the "additional" damages awarded under the DTPA, the jury also awarded common law exemplary (punitive) damages as follows:

| For Against | Plaintiff Jackson | Plaintiff Dowdy |
|---|---|---|
| Defendant St. Gelais | $800,000.00 | $1,000,000.00 |
| Defendant Transoil | $400,000.00 | $ 500,000.00 |
| Defendant Standard Systems & Technology | $400,000.00 | $ 500,000.00 |
| Standard Drilling Co. | $400,000.00 | $ 500,000.00 |
| Hemisphere Investment | $400,000.00 | $ 500,000.00 |

■ Appellants first complain that an award of common law exemplary damages and DTPA "additional" damages is error. We do not agree. Recovery under the DTPA is, as a general rule, cumulative rather than exclusive of other available remedies. *Kish v. Van Note, supra,* at 467; Tex. Bus. & Com. Code Ann. § 17.43 (Vernon Supp. 1987). While recovery of both exemplary damages and statutory additional damages *for the same act* is prohibited, *Butler v. Joseph's Wine Shop, Inc., supra,* in the case before us no such error occurred. Plaintiffs alleged and proved several distinct acts: (1) violations of the Deceptive Trade Practices Act (misrepresentations) in connection with the sale of the rigs, (2) fraudulent inducement to contract in connection with the leases, (3) civil conspiracy and (4) breach of contract. The first act supports an award of "additional" damages under the DTPA. The second and third acts support an award of exemplary damages under common law. *See Kish v. Van Note,* and *Shell Oil Company v. Chapman, supra.* In addition, the supreme court's requirement of separate and distinct findings of actual damages for each act was met. *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361 (Tex.1987). The jury found that the defendants breached their contracts with the plaintiffs, conspired to defraud them, committed fraud, and violated several provisions of the DTPA. The fact that the jury awarded the same amount of damages for each of those acts does not negate their obvious intent to award separate damages for the DTPA, fraud, breach of contract and conspiracy findings. According to *Shell Oil Company v. Chapman, supra,*

> The submission of damage issues conditioned on liability findings, although erroneous, produced answers clearly indicating the jury's intent to find separate damages for the deceptive trade violations and for negligence. As to the DTPA, the jury found defendant guilty of certain proscribed conduct; found that conduct to have been a producing cause of damages to plaintiff; and, found an amount of damages. While the first damage issue did not limit the jury's answer to damages for deceptive trade

practice violations solely, as neither defendant objected, the trial court judgment should be properly upheld. 682 S.W.2d at 259.

The same result is proper in the case before us. The jury gave affirmative answers to issues on each theory of liability submitted by the plaintiffs. Each separate liability issue was followed by a causation issue which was also answered affirmatively. Answers to individual damage issues followed. Therefore it is clear that the jury intended to hold the defendants liable for all the acts alleged and to fix damages for each. Plaintiffs have shown themselves to be entitled to both exemplary damages and additional DTPA damages. Appellants' points of error challenging the award of statutory and common law punitive damages are overruled.

As previously noted, while the measure of damages used by the jury was not appropriate in every instance, no objection was made on those grounds and no issues or instructions on other measures were submitted. Similarly, the plaintiffs did not object to entry of judgment for a single recovery of actual damages even though their pleadings and the form of the charge might have supported a greater recovery under the reasoning in *Chapman.* For this reason the actual damage award should stand.

■ Next, appellants attack the award of the "additional" damages against all of the defendants jointly and severally. The judgment itself correctly recites the separate awards of exemplary and additional damages as found by the jury but, in the decretal portion of the judgment, the court erroneously added the individual exemplary damage awards and the additional DTPA damages awarded solely against Transoil and referred to this total as "additional" damages. He then held the defendants who were not in bankruptcy jointly and severally liable for the total. Texas courts have long recognized the propriety of separate findings regarding the amount of exemplary damages, if any, to be assessed against each defendant. *St. Louis & S.W. Ry. Co. v. Thompson,* 102 Tex. 89, 113

S.W. 144, 147 (1908); *Schutz v. Morris*, 201 S.W.2d 144, 147 (Tex.Civ.App.—Austin 1947, no writ). *See also, Akin v. Dahl*, 661 S.W.2d 917, 922 (Tex.1983) (concurring opinion). The criteria used in setting the amount of exemplary damages demand individual assessment by the jury of each defendant's conduct, situation, sensibilities, and culpabilities. *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1176 (5th Cir.1982). The trial court erroneously combined the common law exemplary damages awarded against each defendant with the award of "additional" damages under the DTPA. However, while we find error in the combination of the awards and the imposition of joint and several liability therefor, we need not reverse on these grounds. Rule 81, Tex.R.App.P.

Separate special issues were submitted and answered on the various types of damages sought by plaintiffs. Actual damages were awarded under special issue six in the amount of $596,863.70 to Jackson and $897,485.30 to Dowdy. Additional damages in excess of two times these amounts were awarded against Transoil under the DTPA in special issue 17. The court, as noted above, properly reduced these additional damages to an amount two times that of the actuals. In special issue eight common law exemplary damages were awarded in connection with the fraud and conspiracy findings. Special issue eight properly breaks down this award by individual defendants. Since the jury's findings support individual awards, the trial court's error in combining these amounts can be corrected by reforming the judgment to reflect the jury's findings. Rule 81, Tex.R.App.P. Reformation also corrects the trial court's error in holding the defendants jointly and severally liable for the exemplary damages awards.

The judgment of the trial court awarded Jerry Dowdy judgment against Erling Larsen, Transoil Rig Equipment, Inc., Jean Marie St. Gelais, Standard Systems and Technology, Inc., and International Equipment and Financial Services, Ltd., jointly and severally, for actual damages in the amount of $897,485.30. That part of the trial court's judgment is affirmed.

The judgment of the trial court awarded Jerry Dowdy judgment against Transoil Rig Equipment, Inc., Jean Marie St. Gelais, Standard Systems and Technology, Inc., and International Equipment and Financial Services, Ltd., jointly and severally, for "additional" damages in the amount of $4,294,970.60. That part of the trial court's judgment is set aside, and in lieu thereof this court renders judgment in favor of Jerry Dowdy as follows:

(1) against Transoil Rig Equipment, Inc. for additional damages under the Deceptive Trade Practices Act in the amount of $1,794,970.60;

(2) against Transoil Rig Equipment, Inc. for exemplary damages in the amount of $500,000.00;

(3) against Jean Marie St. Gelais for exemplary damages in the amount of $1,000,000.00; and

(4) against Standard Systems and Technology, Inc. for exemplary damages in the amount of $500,000.00.

The judgment of the trial court awarded Ocie Jackson judgment against Defendants Erling Larsen, Transoil Rig Equipment, Inc., Jean Marie St. Gelais, Standard Systems and Technology, Inc., and International Equipment and Financial Services, Ltd., jointly and severally, for actual damages in the amount of $596,863.90. That part of the trial court's judgment is affirmed.

The judgment of the trial court awarded Ocie Jackson judgment against Transoil Rig Equipment, Inc., Jean Marie St. Gelais, Standard Systems and Technology, Inc., and International Equipment and Financial Services, Ltd., jointly and severally, for "additional" damages in the amount of $3,193,727.80. That part of the trial court's judgment is set aside, and in lieu thereof this court renders judgment in favor of Ocie Jackson as follows:

(1) against Transoil Rig Equipment, Inc. for additional damages under the Deceptive Trade Practices Act in the amount of $1,193,727.80;

(2) against Transoil Rig Equipment, Inc. for exemplary damages in the amount of $400,000.00;

(3) against Jean Marie St. Gelais for exemplary damages in the amount of $800,-000.00;  and

(4) against Standard Systems and Technology, Inc. for exemplary damages in the amount of $400,000.00.

We have considered appellants' remaining points of error and, finding them to be without merit, overrule them.  In all other respects the judgment of the trial court is affirmed.