Forrest K. GRIDER, individually and as trustee, Dr. Paul Chervinsky, Edward Gelsthrope, Louis A. Green, William M. Spencer, III, Caldwell Marks, W. Donald Campbell, Dr. Phillip P. Brown, Charles Youree, and Earl A. Brown, Jr., Appellants,

v.

The BOSTON CO., INC., TPET Management, Inc., formerly The Boston Co. of Texas, Terrapet Energy Corp., Hanover Management Co., and Carlson Oil, Co., Appellees.

No. 05–87–00952–CV.

Court of Appeals of Texas, Dallas.

March 28, 1989.

Rehearing Denied May 9, 1989.

Ross Hemphill, Dallas, Lawrence T. Gillaspia, Earl A. Brown, Jr., Houston, for appellants.

Robert M. Thornton, John M. House, Dallas, for appellees.

Before HOWELL, ROWE and HECHT,[1] JJ.

---

**1.** The Honorable Nathan L. Hecht, Justice, par- ticipated in the submission of this case and in

HOWELL, Justice.

Forrest K. Grider and nine other partners in several oil and gas limited partnerships (Plaintiffs) sued The Boston Company, Inc. (Boston), its successors and subsidiaries (collectively Defendants) for, *inter alia,* recovery of claimed excessive administrative and professional fees charged to the respective partnerships. The trial court entered a judgment *non obstante veredicto* for Defendants, disregarding a jury verdict for Plaintiffs awarding almost $750,000 in actual damages and $250,000 in punitive damages. In twelve points of error, Plaintiffs challenge the take nothing judgment rendered by the court including the denial of punitive damages, attorneys' fees and interest; Plaintiffs also complain that the judge should have recused himself, that the trial court erred in releasing the parent companies prior to final judgment, and that the court erred in failing to certify the suit as a class action under Texas Rule of Civil Procedure 42. For the reasons recited below, we affirm the trial court's judgment.

## THE JUDGMENT *NON OBSTANTE VEREDICTO* [2]

Initially the Boston Company of Texas (BCOT) was a wholly owned subsidiary of Boston. Co-plaintiff Earl A. Brown, Jr. was president of BCOT until he resigned in 1981. BCOT served as general partner and operated a number of oil and gas limited partnerships in which Plaintiffs held limited partnership interests. In June 1983, Boston sold BCOT to Terrapet Energy Corp. (Terrapet) and the name of BCOT was changed to TPET Management, Inc. (TPET).[3] Each partnership was governed by an integrated, written agreement, all in substantially the same language, as stipulated by the parties. Each agreement contained the following pertinent provisions:

> Subject to any specific limitations contained in this Agreement, the General Partner [BCOT, later TPET] shall have control over the management and affairs of the Partnership, and shall have complete and unrestricted authority and discretion to expend the funds of the Partnership and perform all other acts necessary in its sole discretion to accomplish the purposes of the Partnership, ...

Article II(b).

> Except as herein otherwise provided, the General Partner shall not be liable to the Partnership or any Limited Partner except for wilful [sic] malfeasance or fraud.

Article II(c).

> The General Partner hereby agrees to act as Managing Partner for the Partnership, and in doing so will make available to the Partnerships so much of its managerial and technical staff, office facilities, business machines, and secretarial and clerical help as it may deem necessary in connection with the Partnership's program. All such services will be furnished at cost to and paid for by the Partnership, as determined in accordance with generally accepted accounting practices. The classification of Partnership expenditures as general, administrative, or overhead, on the one hand, or direct charges on the other, and the allocation of such direct charges among Operating Limited Partnerships shall be made by the General Partner after consultation with its accounting advisors, and such classification shall be final, binding and conclusive on all parties.

---

subsequent deliberations. However, he was no longer a member of the Court at the time of the opinion and judgment herein. The remaining members of the submission panel being in agreement, this opinion is delivered by them as the decision of the Court.

2. In reviewing a challenge to a judgment notwithstanding the verdict, we must consider all of the evidence in the light most favorable to the party against whom the judgment was rendered, and every reasonable inference from the evi-

dence must be indulged in that party's favor. *E.g., Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Miller v. Bock Laundry Mach. Co.,* 568 S.W.2d 648, 649–50 (Tex.1977); *Atrium Boutique v. Dallas Mkt. Center Co.,* 696 S.W.2d 197, 198–99 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

3. In most instances, this opinion will refer to the general partner first known as BCOT and later as TPET simply as General Partner.

Article IX. The partnership agreements, as originally signed, had no limitation as to the amount of administrative expenses to be incurred by the general partner. Plaintiffs commenced this lawsuit against the original and successor parents—Boston and Terrapet—and against the subsidiary—BCOT/TPET—in July 1983.

The key question submitted to the jury was question one, which, including the jury's answer, reads:

In answering Question No. 1, you are instructed that the term "excessive" means fees, if any, which exceed those fees, if any, which are customarily charged against a similar oil and gas partnership under the same or substantially the same circumstances.

QUESTION NO. 1

Do you find that the charges, if any, by TPET to the TPET partnerships in question for administrative and professional fees, if any, were:

(a) excessive for the year 1981?
  ANSWER:  yes
(b) excessive for the year 1982?
  ANSWER:  yes
(c) excessive for the year 1983?
  ANSWER:  yes
(d) excessive for the year 1984?
  ANSWER:  yes

Question one, as submitted, differed little from the question requested by Plaintiffs. Plaintiffs, however, did not request a definition of the term "excessive," nor did they object to the court's definition.[4] In common parlance, the term "excessive" is often used to connote extreme or unconscionable actions. In contrast, the court submitted a much milder definition; in effect, the jury was instructed to answer "yes" if Defendants' charges were more than the amount "customarily charged" to similar oil and gas partnerships.

At the same time, the partnership agreements purported to grant "unrestricted authority and discretion" to BCOT and exempted BCOT for liability "except for wil-

ful [sic] malfeasance or fraud." In addition, the General Partner's allocation of indirect expenses was declared by the partnership agreement to be "final, binding and conclusive."

Obviously, the inquiry submitted to the jury did no more than establish that the charges to the partnership were above those "customarily charged." The jury's answer of "yes" failed to establish willful malfeasance, fraud or even an abuse of the broad discretionary powers vested in the General Partner by the above-recited contract language.

It follows, therefore, that the case was submitted to the jury on the wrong theory. Defendants objected that question one lacked support in the evidence and pleadings, and that it failed to inquire about any legally cognizable claim upon which relief could be granted. Under these circumstances, the jury verdict favoring Plaintiffs would not have supported a judgment. The most relief that the trial court could have given to Plaintiffs would have been the award of a new trial. The most relief that we could award to Plaintiffs would be a remand for new trial.

Plaintiffs, however, did not file any motion for new trial, much less one urging inappropriate submission of a jury question or an instruction. In this Court, Plaintiffs limit themselves to a prayer that the trial court's judgment "be reversed and that Judgment be rendered." Ordinarily, an appellant may not have relief not pleaded. *Owest Microwave v. Bedard,* 756 S.W.2d 426, 439 (Tex.App.—Dallas 1988, orig. proceeding); *West End API, Ltd. v. Rothpletz,* 732 S.W.2d 371, 374 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). *But see Kaspar v. Thorne,* 755 S.W.2d 151, 156 (Tex.App.—Dallas 1988, no writ) (op. on reh'g). Thus, if we cannot render, we may be obliged to affirm.

■ There are a number of reasons which compel us to affirm. The jury was instructed to answer "yes" if the administrative charges in question were more than

---

**4.** The record reveals that only Defendants objected to the definition of "excessive" submitted by the trial court.

those customarily charged against *"a similar oil and gas partnership* under the same or substantially the same circumstances" (emphasis added). Plaintiffs offered no evidence concerning any charges made against similar oil and gas partnerships. Plaintiffs restricted their attack on Defendants' administrative charges to a comparison between Defendants' charges and the pre–1981 charges made by the General Partner while it was under the supervision of Plaintiff Brown. Plainly, the charges escalated greatly after Brown resigned from the employ of General Partner. In response, the Defendants have pointed to the fact that after Plaintiff Brown left the employ of the General Partner, the formation of new limited partnerships and the drilling of oil wells, particularly exploratory wells, was drastically scaled back and eventually terminated. Defendants contend that the cessation of these activities necessitated a reallocation of charges resulting in a heavier load upon the pre-existing limited partnerships. Be that as it may, Plaintiffs produced no evidence of the charges made by others to other limited partnerships. The jury has, in effect, declared that Defendants' administrative charges were more than those charged by others, but the finding has no basis in this record.

The only other relief that we could grant Plaintiffs with the case in this posture would be to reverse and remand in the interest of justice. *Cf. Turner, Collie & Braden v. Brookhollow, Inc.,* 642 S.W.2d 160, 165 (Tex.1982) (trial court submitted incorrect special issues and rendered judgment on incorrect issues; supreme court remanded to provide full and effective relief to appellant); *Zion Missionary Baptist Church v. Pearson,* 695 S.W.2d 609, 613 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (error in trial court's judgment required remand to "subserve better the ends of justice"); *Treiber v. Schaefer,* 416 S.W.2d 576, 579 (Tex.Civ.App.—San Antonio 1967, no writ) (trial court tried case on wrong theory; in that situation case was remanded so appellant might furnish more evidence to meet his burden). However, in the absence of a strong probability that Plaintiffs will recover at a new trial, we decline to do so. *Fox v. American Propane, Inc.,* 508 S.W.2d 426, 429 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.) (no remand for retrial on different theory when different theory neither pleaded or proved at first trial). Even more to the point, where there is no error in the trial court's judgment, the appellate court has no power except to affirm. *Sacks v. Dallas Gold & Silver Exchange, Inc.,* 720 S.W.2d 177, 180 (Tex.App.—Dallas 1986, no writ).

In law, the term fraud has varying definitions and usages. However, under all of the definitions, willful misconduct on the part of the defendant is the sine qua non for establishing a case of express fraud. As applied to this case, Plaintiffs had to present evidence of willful misconduct—for example, the assessment of false charges or the deliberate allocation, to Plaintiffs' partnership interests, expenditures not related to the operation of those partnership properties. We find no such evidence in the record. Fraud may be broadly defined as any plan, scheme or device calculated to cheat or to obtain the money or property of the Plaintiff upon false pretenses. Again, we find no such conduct on the part of Defendants.

Under the partnership agreements, the only ground for action against Defendants, other than fraud, was willful malfeasance. If defined broadly, the two terms would be synonymous. Although Plaintiffs have provided this Court with extensive briefs, we are unable to find where they ever have specifically pointed out any certain item or class of items charged to them that would constitute willful malfeasance. Our review of the record reveals no evidence of any act or omission that might arguably fall within the confines of the term "willful malfeasance" as expressed in the partnership agreement.

It is painfully obvious that, after the departure of Plaintiff Brown from the management of General Partner, overhead and administrative fees charged to the Plaintiff limited partners increased significantly. Concurrently with escalating costs,

the selling price of oil dropped drastically. Competent and prudent management on the part of General Partner demanded diligent efforts to cut costs. This record fails to indicate that the General Partner made significant efforts in this direction. It hired a national accounting firm, whose rates were somewhat higher than the local firm it had previously used exclusively. It retained high-salaried personnel on the payroll, possibly beyond the point where their services could or should have been dispensed with. The record does not reflect aggressive efforts to reduce fixed costs in the face of reduced operations and declining revenues.

After a careful study of the evidence, however, we are of the opinion that the greatest complaint which could be made against Defendants would be poor management—the failure to apply a high degree of business skill coupled with the failure to exercise good business judgment. In the absence of a clear abuse of discretion, the judgment used in making business decisions will be respected by the courts. *Texaco Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 808 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

After the filing of this lawsuit, Defendants, in collaboration with Plaintiffs, hired the local accounting firm which had audited the partnership accounts prior to Brown's resignation to review and report on the four years in question. The report was admitted into evidence as Plaintiffs' exhibit number one. It contains no evidence of false charges, no showing that Plaintiffs were ever billed for any charge of substance that was never incurred, or that Plaintiffs were ever billed for any expenditure wholly unrelated to the operation of the partnerships. At the most, the report does no more than impugn Defendants' management tactics. The partnership agreements into which Plaintiffs freely entered insulate Defendants from liability for plain and simple mismanagement.

It is conceded that Plaintiffs did present evidence that partnership revenues from the sales of oil and gas were deposited into the General Partner's bank accounts pending payment of expenditures and the distribution of the net revenues to Plaintiffs. Although the General Partner had broad discretion, this activity was improper and would be an adequate basis for a judgment in favor of Plaintiffs for compensation in the form of a fair rate of interest upon the misapplied funds. However, Plaintiffs have neither placed in evidence nor presented this Court or the court below with any worksheets or calculations based upon the evidence reflecting, in dollars and cents, the amount of judgment which Plaintiffs seek upon this specific claim. Comparatively speaking, the claim does not appear large. Therefore, we affirm the denial of this claim based on Plaintiffs' failure to document.

Plaintiffs also complain of Defendants' failure to provide, promptly after the end of the quarterly operating period, a statement of operations. Even though the basic partnership agreements call only for annual statements, Plaintiffs contend that quarterly statements were required by both the 1983 sales agreement, whereby Boston sold the general partnership to Terrapet, and the prospectus filed with the federal Securities and Exchange Commission in connection with that sale.

Be that as it may, Plaintiffs have presented no evidence of damages that might be attributed to Defendants' alleged omissions in this respect. Had Plaintiffs sought injunctive relief to require that such statements be provided, they very well might have prevailed. However, reversal of the judgment of the court below cannot be predicated on any such failure.

Plaintiffs have liberally sprinkled their pleadings, the evidence, and their briefs to this Court with assertions that Defendants breached their fiduciary duties. The parties concede that the relationship between General Partner and Plaintiffs was a fiduciary one. *See Huffington v. Upchurch* 532 S.W.2d 576, 579 (Tex.1976); *Grierson v. Parker Energy Partners*, 737 S.W.2d 375, 377 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Watson v. Limited Partners of WCKT, Ltd.*, 570 S.W.2d 179, 182 (Tex.Civ. App.—Austin 1978, writ ref'd n.r.e.). How-

ever, a fiduciary may contract with his beneficiaries, at least as long as both parties are competent and reasonably knowledgeable with respect to the subject matter of the contract. The question of the extent to which a fiduciary may limit his liability was explored in the case of *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882 (Tex.App.—Texarkana 1987, writ dism'd by agr.).

█ When the parties bargain on equal terms, a fiduciary may contract for the limitation of his liability. *Cf. Risser*, 739 S.W.2d at 888. However, public policy precludes the limitation of liability for (1) self-dealing, (2) bad faith, (3) intentional adverse acts, and (4) reckless indifference with respect to the beneficiary and his best interest. *Id.* at 897–98. *See also* TEX. PROP.CODE ANN. § 113.059 (Vernon 1984) (repealing former TEX.REV.CIV. STAT.ANN. art. 7425b–22). As far as we can determine, however, this case was never tried on any of these theories.

The *Risser* court approved the following jury-submitted definition of self-dealing:

"Self dealing" as used herein means the Trustee used the advantage of its position to gain any benefit for the Trustee, other than reasonable compensation, or any benefit for any third person, firm, corporation, or entity, at the expense of the Trust and its beneficiaries.

*Risser*, 739 S.W.2d at 899. We emphasize, however, that a fiduciary cannot be branded with engaging in self-dealing and visited with absolute liability simply by an offer of proof that the fiduciary dealt with himself or with those identified with himself. The law does no more than label such transactions as suspect; the fiduciary is then burdened with the obligation to explain their fairness. *Miller v. Miller*, 700 S.W.2d 941, 947 (Tex.App.—Dallas 1985, writ ref'd n.r. e.); *Conrad v. Judson*, 465 S.W.2d 819, 828 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r. e.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972). We will not explore questions about the extent to which fiduciary liability law burdens the general partner of the ordinary oil and gas partnership arrangement with the duty to prove the fairness of administrative charges, overhead charges and other charges that represent little, if anything, more than a means whereby the General Partner might reimburse to himself the salaries of people on its payroll and like expenditures. Such charges, which, although they inure to the benefit of the limited partnership, often constitute little, if anything, more than a means for the recoupment of the general partnership's ordinary cost of doing business. Suffice to say, the case was not tried on any theory of self-dealing. Nowhere have Plaintiffs charged in their pleadings, in their evidence, or in argument to the court below that Defendants or any party affiliated or closely identified with Defendants has reaped any special advantage through the assessment of the overhead and professional charges which Defendants exacted of Plaintiffs.

Plaintiffs complain that the charges in question were too high but, as already pointed out, they have failed to show that any of the charges were not actually incurred or that they were otherwise willfully levied as a part of a scheme to overreach and demand from Plaintiffs the payment of sums which Plaintiffs view to be improper. Any theory of special benefit that may be distilled from *Risser* and the authorities upon which *Risser* is built has not been timely raised. We decline to consider claims based thereon.

Plaintiffs put into evidence a contract between the parent companies, Boston and Terrapet, executed in connection with the sale of the General Partner—their subsidiary BCOT/TPET—in which Terrapet contracted that overhead and administrative charges to the limited partnerships would not exceed $240,000 per year. The contract provision expressly declared that the limited partners would be third-party beneficiaries of the clause.

This contract can have no bearing upon Defendants' potential liability for the years 1981 and 1982, because it was not executed until June 1983. Insofar as 1983 is concerned, the record reflects that the 1983 administrative and overhead charges ex-

ceeded the stipulated $240,000. Assuming that the $240,000 limitation is to be applied on a calendar year basis, and further assuming that it is to be prorated, Plaintiffs have furnished us with no calculations of the amount that they assert is owed them for the calendar year 1983. Likewise, they have furnished us with no calculations of the sum which is allegedly due for calendar year 1984. Although numerous spreadsheets were introduced containing amounts actually charged to the limited partnerships, we are uncertain whether the documents placed in evidence constitute a sufficient basis upon which the alleged overcharges might be determined. Plaintiffs have furnished us with no worksheets to assist in any such calculation of damages allegedly due. We decline to engage in extensive calculations to determine if Plaintiffs might be entitled to any recovery. *See Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons of Texas and Jurisdiction v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

We further decline to award any recovery of the alleged excess for reason that the Plaintiffs failed to plead their right to recover on the basis of this third-party agreement. Defendants objected to admission of the agreement into evidence on grounds that the Plaintiffs failed to plead the third-party beneficiary theory; the trial court overruled the objection, but noted that Defendants were not allowing the theory to be tried by consent. A party seeking to recover for breach of contract must plead the contract upon which he bases his claim. According to the Plaintiff's Fifth Amended Original Petition, Plaintiffs have not sought recovery under this contractual limitation.

In sum, we find no error in the trial court's granting of judgment notwithstanding the verdict. We overrule points one, two and three.

## LIABILITY OF PARENT COMPANIES

Plaintiffs complain through their points ten and eleven of the trial court's actions in dismissing the parent company Boston as a defendant in the case and in excluding defendant Terrapet from the court's charge. Inasmuch as we have found no liability on the part of the subsidiary, it follows that the parent companies cannot be held upon any theory of alter ego or similar claim urging that the parent companies are ultimately responsible for the acts and omissions of the General Partner, their subsidiary. *See Siboney Corp. v. Dresser Indus., Inc.,* 521 S.W.2d 639, 642 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).

The only theory of direct liability asserted against the parent companies would be the claim that Terrapet obtained the use of Plaintiffs' funds without paying interest thereon. As we have already held, Plaintiffs have not demonstrated their right to recover any specific sum of money on this claim. It follows that Plaintiffs sustained no harm through the trial court's action in excluding the parent companies Boston and Terrapet from liability as Defendants. TEX.R.APP.P. 81(b)(1).

## THE DENIAL OF CLASS ACTION STATUS

Plaintiffs also complain in point twelve of the trial court's action in refusing to grant class action status to the case. Class action status would have allowed Plaintiffs to recover on behalf of the other owners of limited partnership interests, numbering about 300. Inasmuch as the trial court denied recovery to the named Plaintiffs alleging themselves to represent the class, and this Court has upheld the trial court's action, the unnamed class members have not been deprived of any recovery by virtue of the court's refusal to consider them as having been joined. Any error of the trial court in this respect was at most harmless. TEX.R.APP.P. 81(b)(1).

## INTEREST, ATTORNEY'S FEES AND EXEMPLARY DAMAGES

By points four through seven, Plaintiffs complain of the trial court's denial of the recovery of interest, attorney's fees, and exemplary damages. Inasmuch as the trial court denied recovery on the underlying claims, and we have upheld that denial,

there is no fund or principal amount upon which interest can be calculated. The claim for interest fails. Likewise, the law is well established that a claim for attorney's fees cannot be sustained where the Plaintiff fails to obtain an affirmative recovery. *See LaFreniere v. Fitzgerald*, 669 S.W.2d 117, 119 (Tex.1984); *Davis Masonry Inc. v. B–F–W Constr. Co., Inc.*, 639 S.W.2d 448, 448 (Tex.1982). Aside from the claim of Plaintiff Brown, which we will address momentarily, Plaintiffs have failed to prevail on any part of their cause of action. No basis exists for the recovery of attorney's fees.

■ Similar reasoning applies to the claim for the recovery of exemplary or punitive damages. As a basic tenet of Texas law, no recovery of exemplary damages can be had in the absence of a recovery of actual damages. *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex.1985); *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753–54 (Tex.1984). *See also Wright v. Gifford–Hill & Co., Inc.*, 725 S.W.2d 712, 714 (Tex.1987). We agree that under certain circumstances, a grant of equitable relief will sustain an award of exemplary damages. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 510 (Tex.1980) (citing *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963)). Plaintiffs, however, have recovered neither damages nor equitable relief. Exemplary damages were thus properly denied. *See Nabours*, 700 S.W.2d at 904.

Plaintiff Brown did recover a judgment in the amount of $18,545, plus prejudgment interest, upon his breach of contract claim. This claim was separate and apart from the main thrust of the lawsuit, which sought to recover against Defendants for allegedly improper overhead and administrative charges incurred in the management of limited partnerships. Brown was not a limited partner; he was the former president of General Partner. On his departure, Defendants contracted to pay him a specified amount based upon the future profits of General Partner. The jury found that the contract was breached and awarded him a recovery, which Defendants have now paid in full.

■ Brown may not recover interest upon his judgment because the principal has been paid. Insofar as the attorney's fee claim is concerned, Plaintiffs made no attempt to apportion part of the entire attorney's fee claim to the Brown cause of action. Brown's claim was a small part of the whole. The jury obviously considered the entire claim when it delivered its verdict for attorney's fees. In response to question two, the jury found overcharges to the limited partners—a claim which since has been denied—in the amount of $743,845. As just stated, the damages found in favor of Plaintiff Brown were fixed at $18,545. Although no jury questions were submitted to determine attorney's fees, Plaintiffs claim that attorney's fees of $55,981.18 were established as a matter of law by uncontradicted evidence.[5] Plaintiffs submitted this figure in their Proposed Judgment on the Verdict.

It would be grossly exorbitant and completely unconscionable to award the sum of $55,981 as attorney's fees when the only affirmative recovery was Plaintiff Brown's judgment in the amount of $18,545. By doing so, we would be permitting the tail to wag the proverbial dog. We hold that Plaintiffs provided no basis in the evidence and requested no issue which would entitle them to recover attorney's fees on behalf of Plaintiff Brown.

■ We also uphold the trial court's action in denying the recovery of exemplary damages to Plaintiff Brown. Plaintiffs failed to establish the existence of a fiduciary relationship between Plaintiff Brown and the Defendants, especially in view of Brown's lack of limited partnership interest. His action was one for breach of contract. Recovery of exemplary damages for the breach of contract will be denied unless an independent tort has been alleged and proven. *Texas Nat'l Bank v. Karnes*,

---

5. Defendants, of course, challenged this figure in their Motion for Judgment Non Obstante Veredicto and to Disregard Findings on Special Issues.

717 S.W.2d 901, 903 (Tex.1986); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). No such independent tort was submitted to the jury and none was found. Plaintiff Brown's exemplary damages award must fail.

## FAILURE OF TRIAL JUDGE TO RECUSE

By points eight and nine, Plaintiffs assert that the trial judge erred in failing to recuse himself, and that the judge to whom the motion for recusal was transferred erred in failing to require the recusal of the trial judge. The rule governing recusal states:

> Judges shall recuse themselves in proceedings in which their impartiality might reasonably be questioned, including but not limited to, instances in which they have a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

TEX.R.CIV.P. 18b(2). As grounds for recusal, Plaintiffs contend that the trial judge exhibited an antagonistic attitude toward them and that his rulings were consistently unfair. We do not intimate that the trial court conducted itself in this fashion. Even so, Plaintiffs' remedy was not a motion to recuse; the proper remedy was to assign error on the basis of the adverse rulings. To require recusal, a judge's bias must be extrajudicial and not based upon in-court rulings. *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Plaintiffs' motion properly failed because it contained no allegations of personal bias from an extrajudicial source. In addition, Plaintiffs did not file the statement of facts from the recusal hearing, providing no record on appeal that might enable us to weigh the evidence leading to the denial of the motion. As a result, Plaintiffs have preserved no error; we have nothing to review. *Evans v. Hoag,* 711 S.W.2d 744, 746 (Tex.App. —Houston [14th Dist.] 1986, writ ref'd n.r. e.). We overrule points nine and ten.

## CONCLUSION

Defendants allege fourteen contingent cross-points of error setting forth conditional grounds of error, in case we should reverse the trial court's judgment. Because we are affirming the trial court's judgment *non obstante veredicto* in all respects, we need not reach these cross-points.

We AFFIRM the trial court's judgment.