David L. MURPHY, Appellant,

v.

SEABARGE, LTD., Appellee.

No. C14–92–01296–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 13, 1994.

Rehearing Denied Feb. 17, 1994.

Greg Frazer, Houston, for appellant.

Susan Hardie, Sandra S. Hall, Hayden Burns, Houston, for appellee.

Before ROBERTSON, CANNON and ROBERT E. MORSE, Jr. (Retired), JJ.

## OPINION

ROBERTSON, Justice.

Appellant, David L. Murphy ("Murphy"), was formerly a general partner of appellee, Seabarge, Ltd., a limited partnership ("Seabarge"). · The limited partners sued Murphy to enjoin him from acting as general partner and force his resignation, for breach of his fiduciary duty, and to recover partnership funds, primarily excessive management fees and expenses, they claimed were paid to him in violation of the partnership agreement and its subsequent modification. After a jury trial, the court entered judgment against Murphy in the amount of $242,202.16. Murphy now appeals, raising nine points of error. We affirm the judgment entered below as modified.

Seabarge is a limited partnership formed and operating pursuant to the Texas Uniform Limited Partnership Act (now the Texas Revised Limited Partnership Act, TEX.REV.CIV. STAT.ANN. art. 6132a–1 (Vernon Supp.1994)). The partnership's purpose is to own and operate ocean going barges, primarily in the offshore oil industry. When Seabarge was originally formed in 1980, there were two general partners, Murphy and Joe B. Dorman. After conflicts developed between Murphy and Dorman, in 1984 it was agreed that Murphy would become the sole general partner.

By 1984, Seabarge was struggling to service its debt and was contemplating filing bankruptcy. Since its inception, Seabarge had been unable to pay any management fee because the partnership agreement made payment of a management fee contingent on Seabarge's ability to service its debt. Section 10 of Seabarge's partnership agreement concerns fees to be paid for management of the barges, and paragraph 10(c) of the partnership provides in pertinent part:

The Partnership shall pay the General Partners' Affiliates an annual Management fee of 14% (5% to LICO and 9% to OES) of cash of revenue actually received by the Partnership from the operation of the Barges. This supervisory fee shall be paid as revenues are received and shall be in lieu of reimbursement for any general overhead or indirect administrative expenses of the General Partners. In the event the gross revenues less all expenses including this Management Fee cause the cash Distribution to be less than the required debt service, then this Management Fee or part thereof necessary to cause the gross revenues less expenses to be equal to debt service of any Term or Refinancing Loan, shall be suspended until such time as the gross revenue less all expenses shall equal to debt service.[1]

Because of its financial concerns, Seabarge held a partnership meeting in August 1984. As a result of that meeting, a "Memo of Understanding" (the "Memorandum") was executed by Murphy and Richard R. Lee, a

---

1. "LICO" is defined in the Partnership Agreement as Lease Investment Corporation, an affiliate of Joe B. Dorman, and "OES" is defined as Offshore Energy Services, an affiliate of David L. Murphy.

financial advisor who represented 52% of the limited partners. It memorialized a discussion of a plan of reorganization to be submitted if the partnership could not avoid bankruptcy. In paragraph 2(A), the memorandum provided that Murphy would assume responsibility for management of the barges and be paid a minimum management fee of $1,500 per barge per month.

From the time he became the sole general partner until his resignation, Murphy paid himself monthly management fees in the amount of $4,500. When one of Seabarge's three barges was sold in 1988, Murphy did not decrease the management fee, but continued paying himself $4,500 each month. Even though the partnership agreement provided that the annual management fee would be "in lieu of reimbursement for any general overhead or indirect administrative fees of the General Partners," Murphy reimbursed himself for administrative and overhead expenses. While the partnership agreement provided for reimbursement to the general partners for expenses in the course of their duties, the operating and management agreement specifically listed the expenses that were covered and those that were not. The memorandum did not provide for any additional reimbursement for expenses. Murphy reimbursed himself, or paid directly, for travel and entertainment, for which reimbursement was not provided in the agreements. It is not disputed that Murphy reported all fees and reimbursements paid, although Seabarge complains that some of Murphy's documentation was insufficient to satisfy the Internal Revenue Service.

In August 1991, the limited partners brought this lawsuit alleging that Murphy paid himself excess management fees and unauthorized expenses and that he violated his fiduciary duty. While the lawsuit was pending, Murphy resigned as general partner, and prior to trial, the court realigned the parties so that Seabarge was substituted as plaintiff in place of the individual limited partners. The court submitted the case to the jury on twelve questions, eight of which were answered favorably to Seabarge.

In his first point of error, Murphy contends that the trial court erred in admitting the memorandum into evidence on grounds of relevancy. We find that this point is without merit.

Evidence is relevant and material if it tends to prove or disprove any fact in issue. Tex.R.Civ.Evid. 401; *Keene Corp. v. Gardner*, 837 S.W.2d 224, 230 (Tex.App.—Dallas 1992, writ denied). Admitting and excluding evidence are matters within the discretion of the trial court. The standard of review in determining whether a trial court erred in an evidentiary ruling is abuse of discretion. *Ethicon, Inc. v. Martinez*, 835 S.W.2d 826, 831 (Tex.App.—Austin 1992, writ denied).

Seabarge contends that Murphy acted under and relied upon the memorandum in payment of his management fee, and then paid himself in excess of the allowed amounts. Murphy argues that the memorandum was not a binding contract and had no power to amend the partnership agreement. Because of the contention that Murphy acted and relied upon the memorandum, its terms are key to this dispute. As Murphy admits in his brief, "[t]hat document is of central importance to this lawsuit." The memorandum was relevant and material and the trial court did not abuse its discretion in admitting it into evidence. We overrule point one.

In his second and third points of error, Murphy contends that the trial court erred in submitting jury question number one. Jury question one asked: "Do you find that Seabarge and David Murphy intended to bind themselves to an agreement that included the terms set forth in the Memorandum of Understanding, paragraph 2(A)?" Murphy argues that this question should not have been submitted because there was no evidence to support its submission and that it was established as a matter of law that the parties did not intend to be bound by the memorandum. We reject these contentions.

Only issues raised by the evidence are to be submitted to the jury. Tex. R.Civ.P. 278. Whether a question is raised

by the evidence is to be determined by the same standard that applies to determination of whether an instructed verdict should be given. *Blonstein v. Blonstein,* 831 S.W.2d 468, 471 (Tex.App.—Houston [14th Dist.] ), *writ denied per curiam,* 848 S.W.2d 82 (Tex. 1992). The reviewing court must view the evidence and inferences in the light most favorable to the party with the burden of securing the finding, disregarding all evidence and inferences to the contrary. If there is any evidence of probative value to support the question, the trial court may not refuse to submit the issue to the jury. *K–Mart Corp. v. Pearson,* 818 S.W.2d 410, 413 (Tex.App.—Houston [1st Dist.] 1991, no writ). We will review all of Murphy's complaints about the sufficiency of the evidence to support submission of jury questions in light of this standard.

Murphy argues that the language of the memorandum establishes that the parties did not intend to be bound. The memorandum provides, in relevant part:

> This memorandum of understanding is not intended to be a binding contract, but rather is an outline of the basic proposals to be presented in the bankruptcy court as part of the debtor's Plan of Reorganization and is therefore specifically made subject to (i) the preparation of appropriate documentation acceptable to the parties hereto and the partnership, and (ii) the approval of the bankruptcy court.

■ The fact that the documentation referred to in the memorandum was contemplated but not executed did not prevent Murphy from agreeing to the terms in the memorandum and acting upon that agreement. Partnership agreements are to be construed and interpreted in accordance with applicable laws of contracts. *Park Cities Corp. v. Byrd,* 534 S.W.2d 668, 672 (Tex.1976). Language contemplating additional written documentation is not conclusive on intent to contract. *See Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 556–57 (Tex.1972) (fact issue existed whether sales contract contained enforceable agreement for employment even though no separate written employment agreement was executed, as stated in the contract); *Foreca, S.A. v. GRD Development Co., Inc.,* 758 S.W.2d 744, 746 (Tex.1988) ("subject to legal documentation" provision in handwritten document did not establish as a matter of law that no agreement was reached). As stated in *Scott:*

> [T]he fact, in and of itself, that parties to an ... informal agreement intend that it shall be reduced to a ... more formal contract will not necessarily prevent present, binding obligations from arising, notwithstanding the contemplated ... formal contract is never drawn up and executed.

*Scott,* 489 S.W.2d at 556 (citations omitted).

■ Reviewing the facts presented in this case most favorably to Seabarge, we find that there is evidence of probative value to support submission of a question on whether the parties intended to be bound by the terms of the memorandum. Actions may manifest an intent to be bound to an agreement, even though the parties may expressly provide a formal contract will be executed in the future. *Id.* Murphy's actions in conformity with the memorandum are sufficient evidence of intent to support submission of question one. There is evidence that Murphy assumed the position of sole general partner pursuant to the memorandum and he began managing the barges, as provided in paragraph 2(A) of the memorandum. He testified that after the memorandum was signed he began acting as sole general partner, and began paying himself a management fee of $4,500 per month. He testified: "I did rely on that [the memorandum] to pay myself $4,500 a month." He also paid himself a 5% commission when one of the barges was sold, as provided in paragraph 2(B) of the memorandum.

■ Whether the parties intended to be bound in the absence of the execution of a contemplated final written agreement is a question of fact. *Foreca,* 758 S.W.2d at 746. Here, the question of the parties' intent was not established as a matter of law and was properly submitted to, and answered by, the

jury in fulfillment of its fact finding responsibilities. We overrule points two and three.

■ In his fourth point of error, Murphy complains that the court erred in submitting jury question three because it did not inquire about a controlling issue. A controlling issue is one which, if answered favorably, will sustain a basis for judgment for the proponent. *Bernal v. Garrison,* 818 S.W.2d 79, 83 (Tex.App.—Corpus Christi 1991, writ denied).

Question three asked whether Murphy paid himself sums in excess of the amounts allowed by the memorandum. Having found that question one was proper, we also find that question three was proper. The jury found that the parties intended to be bound by the terms set forth in paragraph 2(A) of the memorandum; therefore, Murphy's breach of their agreement would support a judgment. We overrule point of error four.

■ In point of error five, Murphy contends that the trial court erred in submitting jury question number four because there was no evidence to support its submission. Question four asked: "Do you find that David Murphy paid himself sums in excess of what was allowed by the Limited Partnership Agreement?"

Murphy admitted he paid himself management fees when these fees had been suspended by the partnership agreement's condition for revenues to exceed debt service, and the agreement never provided for payment of management fees to Murphy individually. Tim Carmody, Seabarge's expert accountant witness, testified that the fees paid to Murphy totaled $463,750, or approximately $65,000 per year, and that Murphy also reimbursed himself for travel and entertainment. Even if fees had been permitted under the original agreement, they would have totalled only $278,211. Murphy also admitted reimbursing himself for overhead and administrative expenses, which were not allowed by the partnership agreement.

Murphy argues that the partnership agreement allowed him to pay himself whatever amount of money was reasonable for barge management. Under the initial arrangement with the two general partners, the barges were to be managed by Murphy's affiliate corporation. If the initial arrangement was terminated, Murphy contends section 10(a) allowed the general partner to hire anyone, including himself, as barge manager, under whatever terms and conditions he deemed appropriate. He asserts he elected to name himself as barge manager, he was entitled to pay himself whatever he deemed appropriate, and his payments to himself were entirely proper in the absence of any evidence that they were unreasonable.

Murphy's argument is not aided by his reliance on *Grider v. Boston Co.,* 773 S.W.2d 338 (Tex.App.—Dallas 1989, writ denied). In determining if excessive fees were paid to the general partner in *Grider,* the key question submitted to the jury instructed that excessive fees meant fees which exceeded those which were customarily charged to a similar partnership under the same or substantially the same circumstances. *Id.* at 340. Because the jury was asked to evaluate the fees based upon amounts customarily charged, comparison evidence was required. None was offered; thus, the court was compelled to affirm a take nothing judgment in favor of the general partners. *Id.* at 340–41. In contrast, here the jury was simply asked if Murphy paid himself "in excess" of what was allowed under the agreements. No comparison evidence of what was customarily charged in the industry was required.

Even if we accept Murphy's interpretation of section 10(a) of the partnership agreement as implying a covenant of reasonableness, we reject his contentions that this implied covenant permitted his actions. Murphy ignores one central requirement of the partnership agreement on which he relies: that before *any* management fees could be paid to *anyone,* the revenues must exceed the debt service. The evidence is undisputed that Seabarge was unable to service its debt. Therefore, Murphy's argument that he was entitled under the partnership agreement to pay himself reasonable fees must fail. *Any* manage-

ment fees paid to Murphy were in violation of the partnership agreement; it was only the memorandum that allowed Murphy to be paid. Trial testimony established that the purpose of the memorandum was to allow payment of a management fee because none had been allowed or paid previously. We conclude that there was sufficient evidence to support submission of question four on excess payments under the partnership agreement, and we overrule point five.

■ Murphy next contends in point of error six that there was no evidence to support the submission of jury question five. Question five inquired about damages: "What is the total amount of money, if any, that David Murphy paid himself in excess of what was allowed?" This question was conditioned on an affirmative answer to either question three or four; thus, damages were to be awarded for either breach of the partnership agreement or the memorandum. The jury found damages in the amount of $74,861 in answer to question five.

■ Murphy did not object to the submission of jury question five. Failure to object to the charge constitutes waiver of error. *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987). Further, even if we construed Murphy's point of error liberally, Murphy failed to preserve a no evidence point by raising a complaint to question five in his motion for judgment notwithstanding the verdict or motion for new trial. *See Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 822 (Tex.1985). We overrule point six.

■ Next, Murphy complains that there was no evidence to support the submission of jury question six, which inquired whether Murphy breached his fiduciary duty to Seabarge. The question also provided the following definition and instruction:

You are instructed that a fiduciary duty arises from a confidential relationship of trust. A fiduciary duty means that David Murphy owed the utmost good faith and the most scrupulous honesty to Seabarge,

and a duty to act fairly and fully disclose all material information to the limited partners of Seabarge. You are instructed that David Murphy owed a fiduciary duty to Seabarge, Ltd.

The evidence supports Murphy's breach of his duty to act fairly and with the utmost good faith with Seabarge because Murphy admitted breaches of the partnership agreement. Specific examples cited were that Murphy purchased, on behalf of Seabarge, an interest in a supply vessel, the *M.V. Benjamin,* which violated the purpose clause of the partnership agreement. Murphy also had the partnership acquire a vehicle for his use, even though travel expenses were not provided for in the agreement or memorandum. Murphy admitted that he paid himself reimbursements for office rent and office supplies. Paragraph 10(c) of the partnership agreement specifically provided that the management fees would be "in lieu of reimbursement for any general overhead or indirect administrative expenses of the General Partners." In addition, just before he was removed as general partner, Murphy wrote two checks totalling $65,000 of partnership funds to a company he controlled, allegedly as payment of a commission owed him when the partnership was first formed. We find these facts support submission of jury question six.

Murphy argues that the money he "paid to himself is not a breach of a fiduciary duty unless it was in excess of that authorized by the Limited Partnership Agreement." Having found that these payments *were* in breach of the agreement, we must conclude that they constitute a breach of fiduciary duty. Murphy also argues that his actions merely constituted management decisions that he could appropriately make, and that Seabarge had no cause of action against him for such decisions even if they were unwise or the result of negligence. *See Ferguson v. Williams,* 670 S.W.2d 327, 331 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Based upon the specific allegations in this case, we cannot agree. Murphy argues that his management authority included the right to expend travel

and entertainment money and to purchase a hunting lease for entertainment. He argues that his purchase of a car was cheaper for the partnership than reimbursement for mileage. He ignores the fact that the partnership agreement did not allow reimbursement for travel or entertainment. Again ignoring a specific violation of the terms of the partnership agreement, Murphy argues that the partnership was not harmed by his purchase of the supply vessel; in fact, he contends the partnership actually made a profit from the venture. If true, the outcome of this investment only affects Seabarge's damages; it does not change the fact the purchase of the supply vessel violated the partnership agreement. Murphy did more than exercise management authority; he made purchases and payments to himself which either were not permitted or were expressly prohibited under the partnership agreement or memorandum. These violations cannot be said to be merely management decisions.

Murphy contends that because he reported all payments, expenses, purchases, and reimbursements, he could not have violated his fiduciary duty. He argues that because he did not conceal or misrepresent his actions, or falsify his reports, he cannot have been in breach. We disagree. We find that there was more than sufficient evidence to support the submission of an issue on breach of fiduciary duty and overrule point of error seven.

■ In his eighth point of error, Murphy asserts that the trial court erred in submitting jury question seven because there was no evidence supporting its submission. Question seven inquired about damages from Murphy's breach of fiduciary duty. It asked: "What sum of money do you find would reasonably compensate Seabarge, Ltd., for its losses, if any, resulting from David Murphy's breach of fiduciary duty?" The jury found damages in the amount of $80,611.

Seabarge presented evidence to support these damages, including the following cited in its brief: poorly documented travel and entertainment expenses; management fees in excess of the amounts allowed; unautho-

rized expenses for hunting leases; unauthorized automobile expenses; unauthorized payment of $65,000 to Murphy's company; and unauthorized partnership distributions paid to Murphy. In addition, Murphy admitted paying unauthorized overhead expenses of at least $900 per month from October 1984 to March 1992. We find that there was sufficient evidence to support the submission of question seven, and overrule point of error eight.

■ Finally, in point of error nine, Murphy alleges that the trial court erred in entering judgment in an amount that included the damages found in response to both question five and question seven because combining the two amounts allowed an impermissible double recovery. We agree.

In answer to question five, the jury found damages for breach of the partnership agreement or memorandum in the amount of $74,861, and in answer to question seven, the jury found damages for breach of fiduciary duty totaled $80,611. The trial court entered judgment for both amounts.

Under the facts presented here, Murphy's breaches of the partnership agreement also constituted a breach of his fiduciary duty. In its fourth amended original petition, Seabarge alleged Murphy committed acts of self dealing and violations of the partnership agreement. There is no distinction drawn between which acts constitute self dealing, breach of fiduciary duty, or breach of the partnership agreement. The causes of action for breach of the partnership agreement or its modification and breach of fiduciary duty are based upon the same facts. As Seabarge admitted in its brief, Murphy breached the partnership agreement and "[t]he breach of fiduciary duty flows from those breaches." In addition, in his jury argument, Seabarge's counsel argued, in his discussion of the damages for breach of fiduciary duty, that the damages were the same as for breach of the agreements: "I submit to you that it is the same damages that I outlined for the previous question, $280,942." Seabarge admitted, and we concur, that the damages for both breaches were the same.

Merely because the total of the judgment is less than the amount Seabarge requested and for which it submitted evidence does not mean that the trial court could properly add the two damage issues together. "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R.CIV.P. 301; *See Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 933 (Tex.App.— Houston [14th Dist.] 1982, writ ref'd n.r.e.). Seabarge is entitled only to recover damages to compensate for its loss as a result of Murphy's conduct. Here, both questions inquire about damages for the same conduct. To add the damages under each theory and render judgment for the total results in an impermissible double recovery. *Southern County Mut. Ins. Co. v. First Bank & Trust of Groves*, 750 S.W.2d 170, 173–74 (Tex.1988).

Seabarge relies upon the following authorities to support its contention that damages for both breaches were properly included in the judgment: *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361 (Tex.1987); *Shell Oil Co. v. Chapman*, 682 S.W.2d 257 (Tex.1984); and *St. Gelais v. Jackson*, 769 S.W.2d 249 (Tex.App.—Houston [14th Dist.] 1988, no writ). First, we note that all of these cases included a cause of action under Texas' Deceptive Trade Practices—Consumer Protection Act (DTPA). TEX.BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987). Recovery under the DTPA is cumulative, rather than exclusive, of other remedies, and simultaneous recovery with another legal theory is generally allowed. *Kish v. Van Note*, 692 S.W.2d 463, 467 (Tex.1985); TEX. BUS. & COM.CODE ANN. § 17.43 (Vernon 1987).

We also note that the language Seabarge relies on in *Chapman* is dicta. The supreme court found that appellants had not preserved error and declined to find a double recovery, but went on to note that, based upon two separate inquiries, the jury intended to find separate damages for the deceptive trade violations and for negligence. *Chapman*, 682 S.W.2d at 259.

Seabarge relies on *Birchfield* for the proposition that if separate and distinct findings of damages on both acts of negligence and deceptive acts or practices are made, the resulting award of damages based on both theories will not constitute an impermissible double recovery. 747 S.W.2d at 367. This court relied upon both *Birchfield* and *Chapman* in *St. Gelais*, where recovery of both exemplary damages and statutory additional damages was upheld. *St. Gelais* relied on the fact that plaintiffs alleged and proved several distinct acts, one supporting DTPA additional damages, and others supporting exemplary damages under common law. 769 S.W.2d at 259. This court found that the jury obviously intended to award separate damages for DTPA, fraud, breach of contract and conspiracy, each of which were supported by separate and distinct findings. *Id.*

Seabarge also cites *Dahl v. Akin*, 645 S.W.2d 506 (Tex.App.—Amarillo 1982), *aff'd on other grounds*, 661 S.W.2d 917 (Tex.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). *Dahl* involved two damage awards for malicious prosecution for two separate suits, one a guardianship and the other a mental illness proceeding. The court sustained the jury's findings, found that different objectives were sought by each suit, and there was no double recovery. *Id.* at 517. Clearly, because damages were awarded for two different malicious suits, separate and distinct wrongs were compensated.

In contrast, in this case, while the jury did answer affirmatively to breach of the partnership agreements and breach of fiduciary duty, these findings were not based upon distinct acts. The proof of both breaches consisted of the same conduct. The specific acts that Seabarge cites as breaches of fiduciary duty are as follows: undocumented travel and entertainment charges; management fees in excess of the amounts allowed by the Memorandum; unauthorized hunting expenses; unauthorized automobile expenses; unauthorized payment of $65,000 to Murphy's company; unauthorized partnership distributions paid to Murphy; and overhead expenses of at least $900 per month

from October 1984 to March 1992. Murphy cites to the same evidence to support breach of the partnership agreements.

For evidence of the jury's intent, we look to the note it submitted to the court (CX–1): "Your Honor: Regarding question # 7, we have included a sum of money which we also included in the answer to question # 5. Is this duplication consistent with the intent of question # 7 or will it result in a duplicate award[?]" Here, it is clear the jury intended to include at least some of the same amounts as damages in answer to both questions. Without evidence of distinct acts to support each finding, we conclude that entering judgment on both damage figures results in a double recovery. We find that the trial court erred in adding the damages together and sustain point of error nine.

■ When, as in this case, the plaintiff establishes separate theories of liability based on the same facts, and fails to elect between two recoveries, then the court should render judgment on the finding affording the greater recovery. *Birchfield*, 747 S.W.2d at 367. The damages in question seven afford Seabarge the greater recovery; judgment should have been rendered on that finding, and not have included question five damages. We modify the judgment to delete the award of $74,861 in damages, including deletion of prejudgment interest on that sum, and in all other respects the judgment of the trial court is affirmed.